**ZOILA NIEVES and RAFAEL NIEVES, both mental incompetents by their next of kin GEORGE FELICIANO, Plaintiffs**

v.

**FELIX PITTERSON, Defendant**

Civil No. 1980/308

District Court of the Virgin Islands

Div. of St. Croix

August 3, 1983

EDDY RIVERA, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

WARREN B. COLE, ESQ., Christiansted, St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

The plaintiffs brought this case to rescind a thirty-year-old deed from the Nieves family to Felix Pitterson, of more than 383 acres of land in Estates Beck's Grove, Cane Valley and Clairmont, St. Croix. More properly put, the action is to rescind the deed as to them, and obtain the return of, or the value of, 2/13ths of the property. For the reasons stated in this opinion, the Court finds that the plaintiffs have not sustained the burden of proof, and the complaint will be dismissed with prejudice.

## I. FACTS

This action was originally brought on behalf of two of the original grantors of the property in question, Zoila Nieves and Rafael Nieves. Both of them became deceased before trial, and the action was continued in the name of their heirs. In actual fact, Rafael Nieves never fathered any children, and his heirs, therefore, would be his brothers and sisters, if living, and the children of his brothers and sisters who are deceased. Zoila Nieves left children surviving her.

The transaction in question took place on or about November 7, 1953, when certain brothers and sisters comprising senior members of the Nieves family executed deeds to approximately 383 acres of land consisting of Plots 9A, 9B and 28A of Estate Beck's Grove, and Plots 27A, 27B and 28B of Estates Cane Valley and Clairmont.

The grantee was Felix Pitterson. The question of whether full value was paid for the property is not in issue, and no claim has

been made that Pitterson engaged in any fraudulent conduct to procure the sale of the property. Rather, the evidence is that members of the Nieves family solicited Pitterson to purchase the property, and he agreed, after another proposed sale did not take place.

It is the contention of the plaintiffs that Rafael Nieves was so severely retarded that he was not competent to execute a deed of his 1/13th interest in the property. It is also claimed that Zoila Nieves, living in New York City in 1953, suffered from a debilitating mental illness which made her incompetent at the time she executed the deed. In fact, it is alleged that she was hospitalized in a mental institution for this illness. Thus, it is claimed, the deed should be rescinded as to these two persons, and 2/13ths of the property returned to their heirs.

## II. APPLICABLE LAW

The action in this case for rescission is an equitable proceeding. Cancellation of a deed is an exercise of extraordinary powers of a court of equity which should not be exercised except where the evidence is clear, cogent and convincing. The burden rests on the party seeking to have the deed cancelled. Polette v. Williams, 496 S.W.2d 340 (Mo. 1973). Likewise, equity will not set aside a voluntary conveyance except in cases of fraud, actual or constructive. Wood v. LeGoff, 121 A.2d 468 (Me. 1968).

It is also held as a general proposition of law that before rescinding a contract, the court must determine that the parties can be returned to the status quo and that there will be no undue hardship to the defendant. Barber v. Somers, 150 A.2d 408, 411 (N.H. 1959).

With these principles in mind, we turn to a discussion of the issues.

## III. DISCUSSION

### A. *Zoila Nieves*

The deed to Pitterson executed by Zoila Nieves bears the date October 9, 1953, when she was in a mental hospital. It is notarized, and there is no evidence that she did not execute the deed on her own behalf. The evidence is contradictory as to whether Zoila Nieves was competent to execute the deed. Certain of her relatives state that, at the time, she was capable of understanding what was going on. Dr. Barry Ramer, testifying from medical records, indicates to the contrary. However, certain of the medical records of Zoila

Nieves indicate that during the period immediately after her admission to the hospital, which is the same period when the deed was signed, she was well oriented and not in any psychotic state.

■ Certainly, the evidence is not clear and convincing that Zoila Nieves was incompetent at the time. To the contrary, the Court finds from the evidence that Zoila Nieves, when she executed the deed to Felix Pitterson, was competent. It will not be rescinded on behalf of her heirs.

### B. *Rafael Nieves*

Rafael Nieves' "X" appears on the deed. His sister, Natividad Nieves, testified at the trial, and other evidence supports this testimony, that he was mentally retarded. He could not read or write or do even the most basic arithmetic. He lived with his mother and other relatives during his entire life, working at simple tasks. She testified that he was retarded during his lifetime, and there is no reason to suggest otherwise. Natividad Nieves also testified that, as best she could remember, when the land was sold to Pitterson, Rafael Nieves' share of the money was turned over to the person taking care of him for his own care and benefit.

The plaintiffs suggest that because Rafael Nieves could not read or write and was severely mentally retarded, the deed should be cancelled as to his 1/13th interest, and the share returned to his heirs, or an appropriate sum of money should be awarded for that interest. The heirs of Rafael Nieves would be those of his brothers and sisters still alive, and the children of those brothers and sisters who are now dead, i.e., the heirs of the very people who were instrumental in deeding the property to Pitterson, including Rafael Nieves' share.

This Court will not accommodate them. Felix Pitterson, from the evidence, purchased the property in good faith, without any hint of fraud on his part, for an amount that is not challenged as to fair value. To permit the heirs of those who sold the property to gain the return of a portion of it because of the actions of the Nieves family, and not Pitterson, would be grossly inequitable, and a hardship on Pitterson.

■ Pitterson has owned the property for 30 years. He was never challenged in that ownership. It is for situations such as this that a court of equity exists, to act as a conscience to promote fair dealing. The conscience of this Court requires that the original sale of the 383 acres in question be sanctioned and upheld. Whether Rafael

Nieves was incompetent and severely retarded, in such a way as to suggest voiding of the transaction as to him, is not the central question. Rather, the question is whether 30 years later that deed should be rescinded for his 1/13th share, in favor of others whose interest is descended from those who promoted and caused his signature to be placed on the deed in the first place. Equity will not support such a rescission.

## CONCLUSION

The plaintiffs' complaint will be dismissed with prejudice on the grounds of failure of proof as to Zoila Nieves and by reason of equitable principles as to Rafael Nieves.

## JUDGMENT

This matter came before the Court for trial on May 10, 1983. All parties were present in person or by counsel. All parties presented evidence. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED, ADJUDGED AND DECREED:

THAT the complaint herein be and the same is hereby DISMISSED, with prejudice.