**KENNETH MORRIS and CORLETTE MORRIS, Plaintiffs**

**v.**

**TIMOTHY ERNEST a/k/a TIMOTHY EARNEST and**
**THE BANK OF NOVA SCOTIA, Defendants**

**CECIL PENN, Plaintiff**

**v.**

**KENNETH E. MORRIS, CORLETTE L. MORRIS and**
**THE BANK OF NOVA SCOTIA, Defendants**

Civil No. 452/1998 Consolidated with, Civil No. 691/2000

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

January 8, 2002

GEORGE M. ETHRIDGE, ESQ., St. Thomas, Virgin Islands, *Attorney for Kenneth and Corlette Morris*

Stryker, Duensing, Casner, & Dollison, (MATTHEW J. DUENSING, ESQ.), St. Thomas, Virgin Islands, *Attorneys for The Bank of Nova Scotia*

Grunert, Stout & Bruch, (SUSAN BRUCH MOOREHEAD, ESQ.), St. Thomas, Virgin Islands, *Attorneys for Cecil Penn*

HODGE, *Judge*

## MEMORANDUM OPINION

(January 8, 2002)

Before the Court are Kenneth and Corlette Morris' ("Morrises") motion for partial summary judgment against Timothy Earnest and The Bank of Nova Scotia's ("Bank") motion for summary judgment against Cecil Penn, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the . reasons set forth below, the Morrises' motion shall be GRANTED and the Bank's motion shall be GRANTED IN PART.

## I. FACTS

This consolidated action involves a number of claims arising out of a real property transaction related to the sale of Parcel 1A-9-1 Estate Dorothea, No. 7A Little Northside Quarter, St. Thomas, Virgin Islands ("the property"). In consideration for payment of $46,000.00, Defendant Earnest executed a Warranty Deed conveying the property to the Morrises. To finance the transaction, the Morrises obtained a loan from The Bank of Nova Scotia and the debt was secured by a first priority mortgage, which was recorded at the Office of the Recorder of Deeds on December 5, 1997.

However, on August 15, 1997, before Earnest sold the property to the Morrises, this Court awarded the property to Cecil Penn, by Judgment dated August 14, 1997 and Deed of Clerk dated August 15, 1997. The Judgment and Clerk's Deed resulted from an unrelated action between Penn and Earnest, wherein Penn received title to the property.[1] Thus, Penn's Deed was issued before Earnest attempted to convey the property to the Morrises, although, significantly, the Clerk's Deed was not filed until January 21, 1998—after the Morrises recorded their deed from Earnest.

In 1998, after learning of Penn's claim to the property, the Morrises commenced an action against Earnest and, in their Second Amended Complaint, added the Bank as a defendant. Default was entered against Earnest, and on May 31, 2001 the Morrises moved for summary judgment. The Morrises ask the Court to rescind the transaction, at which time the Bank's Mortgage would be released as to the subject property, and for judgment against Earnest in the amount of $46,000.00 plus interest, together with $7,996.00 representing the cost of obtaining surveys and appraisals of the property. Further, the Morrises ask that this Judgment be applied against the purchase of three other St. Thomas properties, which are also owned by Earnest.[2]

---

[1] A Notice of *Lis Pendens* was allegedly filed on April 28, 1993, however, the title search performed in connection with the Morrises' purchase and mortgage reveled no title defects. A Notice of *Lis Pendens* puts intending purchasers, like the Morrises, on notice that any interest acquired by them in the property in litigation is subject to the decision of the Court. 28 V.I.C. § 130; 28 V.I.C. § 122; *East St. Croix Beach Club, Inc. v. Caribe Isle, Inc.*, 17 V.I. 119 (Terr. Ct. 1980).

[2] Notice of *Lis Pendens* was filed against these properties on December 16, 1998.

Because Penn received his Deed and Judgment before Earnest attempted to sell the property, Penn contacted the Bank and demanded that the Bank release its Mortgage from the property on May 22, 2000. On November 27, 2000, after receiving no response, Penn commenced an action against the Morrises and the Bank, claiming slander of title, trespass, negligence and interference with the use and enjoyment of property. On June 22, 2001, the Bank filed its motion for summary judgment, which Penn opposes.

## II. DISCUSSION

Summary judgment is proper when there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56. Summary judgment will be granted against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). The Court should grant summary judgment only where, after viewing all evidence presented in a light most favorable to the nonmoving party, it can conclude that no reasonable trier of fact could find for the nonmovant. *Id.*

### A. The Morrises Claim for Rescission and Recovery

The Morrises contend that Earnest executed a Warranty Deed in their favor. In that Deed, Earnest warranted that he had good title to the property and that the land was free from undisclosed encumbrances. Specifically, the Warranty Deed provided:

> AND THE GRANTOR WARRANTS that he is seized of the premises in fee simple and has good right to convey the premises, that the premises are free from encumbrances except as set forth or referred to herein. ...

However, as evidenced by this Court's Judgment of August 14, 1997, Earnest had already lost title to Cecil Penn. Therefore, by attempting to convey the property to the Morrises, Earnest breached the warranties set forth in the deed.

Where a seller cannot convey land free of encumbrances, the purchaser may elect to rescind the transaction. In addition, the purchaser may recover his purchase money. *Hollenbach v. Moore*, 7 Leg. Gaz. 52

(Pa. 1875); *Appeal of People's Sav. Bank of Pittsburgh*, 2 Sadler 287, 3 A. 821 (Pa. 1886). In this sense, rescission undoes the transaction—abrogating all of the rights and responsibilities of the parties—and returns them to the status *quo. McDonald v. Frietze*, 24 V.I. 170 (Terr. Ct. 1989); *Nieves v. Pitterson*, 19 V.I. 633 (D.V.I. 1983).

■ In this case, Earnest lost title to the property in a civil action, which was commenced before he attempted to sell the property to the Morrises, and which was finally resolved on August 15, 1997. As a result, Cecil Penn, and not Earnest, owned the property as of that date. Nonetheless, Earnest attempted to convey the property to the Morrises several months later. Obviously, having lost title to the property, Earnest could not convey marketable title.[3]

Therefore, it is beyond dispute that Earnest breached the warranties set forth in the Warranty Deed. As a result, he is liable to the Morrises for that breach. Accordingly, with respect to the Morrises' claims for rescission and recovery of the purchase price, summary judgment shall be GRANTED in favor of the Morrises, and against Earnest.

## B. Penn's Claims for Slander of Title, Intentional Interference with Use and Enjoyment of Property and Negligence

In addition to the Morrises claims, discussed above, Cecil Penn commenced an action wherein he seeks damages from the Morrises and the Bank. Penn claims that, by refusing to release the mortgage, the Bank is liable for slander of title, interference with the use and enjoyment of property and negligence. In response, the Bank has filed a motion for summary judgment, which Penn opposes. In its motion for summary judgment, the Bank argues that it lacked the requisite level of intent to commit an intentional tort against Penn and that, in addition, Penn has failed to assert any cognizable negligence claim.

---

[3] Although the Morrises argue in their complaint that Earnest did not know about the pending litigation, *Cecil Penn, et al. v. Helge Jeppesen and Timothy Earnest*, Civil No. 528/1990, because the Notice of Lis Pendens was not filed when Earnest recorded his deed, in fact, he was a party to that action. This Court is satisfied that Earnest had notice of the proceedings and the Judgment; and, it is immaterial that notice of that action may have been filed after the date that Earnest recorded his Deed.

## 1. Slander of Title

With respect to Count I of the Complaint, Slander of Title, Penn maintains that the Bank, with actual or constructive knowledge of his claim to title,[4] has recorded a security interest against the property. Slander of Title is a species of 'Injurious Falsehood' that, like defamation, causes injury to a plaintiff as a result of some third person's reluctance to associate or do business with him. Ordinarily this injury is manifested in the Plaintiff's inability to sell or lease his property. *See,* William L. Prosser, LAW OF TORTS, at 920 (West 1971); RESTATEMENT (SECOND) OF TORTS § 624 (1977). However, slander of title differs from personal defamation in several respects:

> One is that proof of special harm is required in all cases. Another is that there must be proof of a greater amount of fault than negligence on the part of the defendant regarding the falsity of the statement. RESTATEMENT (SECOND) OF TORTS § 624, comment a (1977).

Although Penn alleges that the Bank acted with malice, he has offered no evidence in support of this claim. In addition, although Penn opposes this Motion for Summary Judgment, he has failed to cite any authority in support of his claim for Slander of Title.

In light of this ongoing litigation, where Penn asks the Court to determine who is the rightful owner of the property, the argument that the Bank's mortgage constitutes a 'false' claim against Penn's title is premature. Although Penn was issued a Clerk's Deed before Earnest attempted to convey the property to the Morrises, his Clerk's Deed was not recorded until January 21, 1998—after the Bank recorded its mortgage and after the Morrises recorded their deed from Earnest.

In the Virgin Islands,

> Every conveyance of real property ... which is not filed for record, shall be void against any subsequent purchaser in good faith and for a valuable consideration of the same real property ... whose conveyance is first duly recorded. 28 V.I.C. § 124.

---

[4] Penn argues that the Bank has notice because he filed a Notice of *Lis Pendens* on April 28, 1993 with respect to his claim against Earnest.

While this statute appears to be a "race statute," courts have interpreted it as a "race-notice statute" at least with respect to mortgages. *Chase Manhattan Bank, N. A. v. Miller*, 39 V.I. 123 (Terr. Ct. 1998); *Royal Bank of Canada v. Clarke*, 373 F. Supp. 599 (D.V.I. 1974). Therefore, it is possible that the Morrises would prevail over Penn, and consequently, that the Bank's security interest would be valid—*i.e.* not an injurious 'falsehood'.

In this case, it is undisputed that the Morrises and the Bank recorded first. Thus, the issue remains whether they recorded with notice of Penn's action. Constructive notice of Penn's interest in the property was purportedly given when he filed a Notice of *Lis Pendens* with the Recorder's Office in 1993. 28 V.I.C. § 130; *Board of Dirs. of Shibui Condo. Assoc. v. Consolidated Int'l, Inc.*, 28 V.I. 57 (Terr. Ct. 1993). Unfortunately, the Bank contends that the notice did not appear when the Bank commissioned a title search in connection with the Morrises' purchase.

Even if a notice of *lis pendens* was filed, and viewing all of the evidence in a light most favorable to Penn, there can be no doubt that the Bank did not intentionally record a mortgage against Penn's property with notice of his title or claims. While it may be true that the title searcher overlooked the notice, there is simply no indication that the Bank would have loaned the Morrises the purchase money had it actually known that they did not have clear title. There is no reason to suspect that the Bank would have financed a transaction knowing that the seller, Earnest, had lost title to Penn. That is because, the Bank's interests would not have been protected and the loan would have been unsecured.

■ The Court is satisfied that the Bank—having commissioned a title search, received warranties from the Morrises, contracted for title insurance and funded the transaction—was unaware of Penn's claim and the resulting Clerk's Deed. There is simply no evidence from which a jury could conclude that the Bank acted with malice or that the Bank participated in any intentional wrongdoing. Because there is no issue as to any material fact surrounding Penn's Slander of Title Claim, the Bank's motion for summary judgment shall be GRANTED with respect to Count I, Slander of Title.

## 2. Intentional Interference with Use and Enjoyment of Property

Penn also claims that the Bank intentionally interfered with his use and enjoyment of the property by recording the mortgage. Although Penn has cited no authority in support of this claim, the RESTATEMENT (SECOND) OF TORTS provides insight into this intentional tort.[5]

> One who intentionally deprives another of his legally protected property interest or causes injury to the interest is subject to liability to the other if his conduct is generally culpable and not justifiable under the circumstances. RESTATEMENT (SECOND) OF TORTS § 871 (1977).

The rule applies to any interference with rightful possession.

■ As discussed above, the Bank recorded a mortgage against the property after it was satisfied, and provided with the a warranty, that the Morrises were purchasing the property free of undisclosed encumbrances—otherwise, the Bank's loan would have been unsecured. Accordingly, it is beyond dispute that the Bank did not "intentionally deprive" Penn of his interest, and, to the contrary, that the Bank was unaware of Penn's interest at the time it recorded the mortgage. Further, by the time the Bank was made aware of Penn's claim, it had already loaned the Morrises the purchase money and the question of who 'owned' the property was, at best, in controversy. Accordingly, the Bank's motion for summary judgment shall be GRANTED with respect to Count III, Intentional Interference with Use and Enjoyment of Property.

## 3. Negligence

■ Finally, Penn alleges that there is a genuine issue of material fact as to whether the Bank, through its title insurance agent, was negligent when it failed to find the *lis pendens* during the title search—what Penn refers to as a "title insurance blunder." It appears that the Bank entered into a contractual relationship with a title insurance company and that the parties to that contract agreed that the Bank would be protected in the event that a defect was later found in the title. Viewing the evidence in a

---

[5] *See* 1 V.I.C. § 4. *See also Isidor Paiewonsky Assocs. v. Sharp Properties, Inc.*, 26 V.I. 228, 761 F. Supp. 1231 (D.V.I. 1991).

light most favorable to Penn, the Court cannot conclude that no material issues remain; rather a fact finder must determine whether the Bank exercised due care before it recorded the mortgage and encumbered the property. Specifically, it must be determined whether the Bank, through its agent, the title insurance company, should have had notice of Penn's claim to title. Accordingly, the Bank's motion for summary judgment shall be DENIED with respect to Penn's claim for negligence.

## III. CONCLUSION

Having reviewed the Motions for Summary Judgment, together with the supporting documents, the Court finds that there are no genuine issues of material fact with respect to the Morrises claims and, therefore, that Kenneth and Corlette Morris' Motion for Summary Judgment shall be GRANTED against Timothy Earnest a/k/a Ernest. In addition, the Court finds that genuine issues of material fact remain as to Penn's negligence claim, and therefore, that The Bank of Nova Scotia's Motion for Summary Judgment shall be DENIED with respect to Count VI, Negligence.