**TIMOTHY ERNEST a/k/a TIMOTHY EARNEST, Appellant/Defendant**

**v.**

**KENNETH MORRIS and CORLETTE MORRIS, Appellees/Plaintiffs**

S. Ct. Civil No. 2013-0065

Supreme Court of the Virgin Islands

May 18, 2016

628

CHRISTOPHER ALLEN KROBLIN, ESQ., Kellerhals Ferguson Kroblin PLLC, St. Thomas, USVI, *Attorney for Appellant.*

GEORGE ETHRIDGE, ESQ., Law Offices of George Ethridge, St. Thomas, USVI, *Attorney for Appellees*.

CABRET, *Associate Justice*; MACKAY, *Designated Justice*; and HINDS ROACH, *Designated Justice*.[1]

## OPINION OF THE COURT

(May 18, 201)

HINDS ROACH, *Designated Justice*. Timothy Ernest (also referred to as Timothy Earnest due to a misspelling of his last name) appeals a July 24, 2013 order of the Superior Court that denied his motion to set aside, or vacate, a default judgment that resulted in a loss of property Ernest owned in St. Thomas. Ernest was a defendant in a number of lawsuits filed in the Superior Court of the Virgin Islands,[2] all of which involved "a number of claims arising out of a real property transaction related to the sale of Parcel 1A-9-1 Estate Dorothea, No. 7A Little Northside Quarter, St. Thomas, Virgin Islands." *Morris v. Ernest*, 44 V.I. 153, 155 (V.I. Super. Ct. 2002). When Ernest failed to appear, the Superior Court entered judgment against him by default. Years later, Ernest sent a letter to the Superior Court claiming that he was never served with process and, as a result, the judgments against him are void because the court never acquired personal jurisdiction over him. The Superior Court rejected Ernest's claims, concluding that too much time had passed to allow him to challenge the judgments.

On appeal, Ernest argues that the Superior Court committed reversible error by denying his motion to vacate because "[n]o passage of time can render a void judgment valid." (Appellant's Br. 12 (citation and internal quotation marks omitted).) We agree with Ernest that time is irrelevant if

---

[1] Chief Justice Rhys S. Hodge and Associate Justice Ive Arlington Swan are recused from this matter. The Honorable Kathleen Y. Mackay and the Honorable Denise A. Hinds Roach, both Judges of the Superior Court of the Virgin Islands, have been designated in their respective places pursuant to section 24(a) of title 4 of the Virgin Islands Code.

[2] Although referred to as the Territorial Court of the Virgin Islands when it issued its January 8, 2002 memorandum opinion, we refer throughout this opinion to the trial court by its current name, the Superior Court of the Virgin Islands, to avoid confusion. *See St. Croix, Ltd. v. Shell Oil Co.*, 60 V.I. 468, 471 n.1 (V.I. 2014) (explaining that the Legislature amended 4 V.I.C. § 2 in 2004 to substitute "Superior" in place of "Territorial" for the name of the local courts of local jurisdiction in the Virgin Islands).

a judgment is void and — on that basis alone — vacate the July 24, 2013 order. We cannot consider whether the default judgment should be set aside for improper service because the Superior Court failed to hold an evidentiary hearing before rejecting Ernest's personal-jurisdiction argument. We therefore direct the Superior Court to hold an evidentiary hearing on remand and give Ernest the opportunity to present evidence in support of his motion to vacate.

## I. FACTS AND PROCEDURAL HISTORY

In a complaint dated June 22, 1990, Ecedro Rabsatt alleged that he purchased four parcels in Estate Dorothea, Parcels 1A-9-1, 1A-9-7, 1A-9-13, and 1A-9-14, from Helge A. Jeppesen, Jr. and Niels P. Jeppesen ("Jeppesens") in September 1986. When the Jeppesens failed to deliver deeds to the properties even though Rabsatt had paid the agreed amount, $37,000, Rabsatt sued them in the Superior Court for specific performance and to quiet title. The 1990 action was initially captioned *Ecedro Rabsatt v. Helge Jeppsen and Niels Jeppsen*[3] and docketed as civil case number 528/1990 (STT) ("1990 action").

Three years later, on April 28, 1993, Rabsatt filed a notice of *lis pendens* along with a copy of the 1990 complaint with the Office of the Recorder of Deeds on St. Thomas. Since "[a] Notice of *Lis Pendens* puts intending purchasers . . . on notice that any interest acquired by them in the property in litigation is subject to the decision of the [c]ourt[s]," *Morris*, 44 V.I. at 155 n.1, Rabsatt's notice put the public on notice of his pending claim to Parcel 1A-9-1. After Rabsatt filed the June 22, 1990 complaint against the Jeppesens, but before he filed the April 28, 1993 notice, the Jeppesens executed a warranty deed and, on October 24, 1991, conveyed the same property, Parcel 1A-9-1, to Timothy Ernest for $25,000. Ernest later recorded his warranty deed at the Office of the

---

[3] The complaint, as initially filed in 1990, inadvertently omitted the second "e" from the Jeppesens' last names. (J.A. 113.) Other documents filed in the 1990 action and included in the joint appendix show the correct spelling as Jeppesen. (*Compare* J.A. 113, *with* J.A 124, 136.) Although we cite the caption as initially filed, we will use the correct spelling of the Jeppesens' last name throughout this opinion. *Cf. Krueger v. Lyng*, 4 F.3d 653, 655 n.3 (8th Cir. 1993) ("For purposes of consistency . . . Bedenbaugh's name will remain misspelled in the caption of this opinion, but will be spelled correctly in the text."); *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1148 n.1 (D.N.M. 2013) ("The Court will leave the caption as it is in the Complaint, but will use the Defendants' spelling in the text.").

Recorder of Deeds on December 12, 1991, which was also two years before Rabsatt filed the *lis pendens* notice.

Sometime after Ernest recorded his deed, but before August 1994 — the record as prepared by the parties is unclear — Rabsatt amended his June 22, 1990 complaint to add Timothy Ernest as a defendant. A process server, Alton George, swore in a February 22, 1995 affidavit that he personally served Timothy Ernest with summons and a copy of the amended complaint in the 1990 action. However, the affidavit did not state where he served Ernest or when.

When Ernest failed to appear, the Superior Court entered default against him in the 1990 action, and later judgment by default on August 14, 1997.[4] The August 14, 1997 judgment decreed that the warranty deed Ernest received from the Jeppesens was "null and void" and directed the Clerk's Office to execute a Clerk's Deed transferring Parcel 1A-9-1, Estate Dorothea, No. 7A Little Northside Quarter, St. Thomas to Cecil Penn "in fee simple absolute." (J.A. 136-37.) The Clerk of the Superior Court issued the Clerk's Deed to Cecil Penn the day after the August 14, 1997 judgment was entered.

After the August 14, 1997 judgment was entered, Ernest executed a warranty deed on November 6, 1997,

> conveying the [Parcel 1A-9-1 Estate Dorothea] property to the Morrises. [The Morrises later recorded their warranty deed from Earnest at the Office of the Recorder of Deeds on November 24, 1997.]
>
> However, on August 15, 1997, before Earnest sold the property to the Morrises, th[e Superior] Court [had already] awarded the property to Cecil Penn . . . . Thus, Penn's Deed was issued before Earnest attempted to convey the property to the Morrises, although, significantly, the Clerk's Deed was not filed until January 21, 1998 — after the Morrises [had] recorded their deed from Earnest.
>
> In 1998, after learning of Penn's claim to the property, the Morrises commenced an action against Earnest ["1998 action"] . . . . Default was

---

[4] Sometime before 1997 — perhaps before 1994 when the complaint was amended to add Ernest — the parties to the 1990 action changed. The caption as reflected in the August 14, 1997 judgment lists Rabsatt as the "Attorney-in-Fact" to Cecil, Wesley, and Gretchen Penn, three new plaintiffs who were not named in the June 22, 1990 complaint. (J.A. 136.) Also, Niels Jeppesen was no longer listed as a defendant.

entered against Earnest, and on May 31, 2001 the Morrises moved for summary judgment. The Morrises ask[ed] the [Superior] Court to rescind the transaction . . . and [enter] judgment against Earnest in the amount of $46,000.00 plus interest, together with $7,996.00 representing the cost of obtaining surveys and appraisals of the property. . . .

Penn [also] commenced an action against the Morrises . . . claiming slander of title, trespass, negligence and interference with the use and enjoyment of property.

*Morris*, 44 V.I. at 155-56.

On January 19, 2001, the Morrises filed a motion to reopen the 1990 action and to consolidate all three actions together. Alleging that one of "[t]he culprit[s] in this matter" was "fraud by the process server," (J.A. 554), the Morrises claimed that the judgment issued in the 1990 action was void because Ernest might not have been personally served in that action. (J.A. 552-52.) The Superior Court denied the motion to reopen the 1990 action but granted the motion to consolidate the 1998 action with Penn's action.

Once the cases were consolidated, the Morrises moved for partial summary judgment against Ernest. In a January 10, 2002 memorandum opinion and order, the Superior Court granted partial summary judgment to the Morrises on their claims against Ernest, finding it "beyond dispute that Earnest breached the warranties set forth in the Warranty Deed" to the Morrises because he

lost title to the property in a civil action, which was commenced before he attempted to sell the property to the Morrises, and which was finally resolved on August 15, 1997. As a result, Cecil Penn, and not Earnest, owned the property as of that date. . . . [H]aving lost title to the property, Earnest could not convey marketable title.

*Morris*, 44 V.I. at 157. After finding that Ernest breached the warranties in the November 6, 1997 deed, the court entered judgment in favor of the Morrises, decreeing the deed rescinded and Ernest liable to the Morrises for breach of the warranties in the warranty deed. The court awarded the Morrises $53,996 in damages plus post-judgment interest.

Once an amended final judgment was issued,[5] the Morrises requested, on April 8, 2009, that the Clerk's Office issue a writ of execution for the amended judgment. The Clerk issued the writ on September 11, 2009, for $118,328.19 plus 4 percent interest and the Marshal's Office later executed the writ by attaching three parcels of land Ernest owned in St. Thomas. Those parcels were later sold at a marshal's sale on April 14, 2010, to the Morrises as the highest bidders. The Superior Court confirmed the marshal's sale by order entered November 22, 2010.[6] When six months passed and Ernest did not redeem the properties during the statutory redemption period, the 1998 action ended. *See* 28 V.I.C. § 535. Then Ernest made his first appearance.

In a letter, dated January 31, 2012, and docketed on February 6, 2012, Ernest wrote to the Superior Court judge assigned to the 1998 action and asked the court, referencing the 1998 action by its case number, to "re-open this case to allow [him] a fair day in court." (J.A. 271.) Ernest explained that he lived in St. Thomas from 1969 to 1980 but moved to Brooklyn, New York, in 1980, where he has been living since. He claimed that though he visited St. Thomas in 2006 and in 2007, he was "never . . . personally served any notice or subpoena from any court" and that "records indicate that the [summons] was served to a mailbox address that. [he] ha[s] not owned in the last thirty five years." (J.A. 272.)

Ernest's January 31, 2012 letter prompted the Superior Court to direct the Clerk's Office, in a February 15, 2012 order, to forward a copy of Ernest's letter to the Morrises and to order them to respond. The Morrises complied on February 28, 2012, but claimed the opposite of what they

---

[5] Since the January 10, 2002 partial judgment award only granted the Morrises post-judgment interest, and because they were not awarded attorney's fees, the Morrises moved, on April 29, 2002, to amend the judgment and to request attorney's fees and·pre-judgment interest. For reasons unclear from the record, that motion was not ruled on, prompting the Morrises to renew their motion twice — first on January 19, 2007, and then on April 30, 2008 — before the court eventually granted it in an order entered on January 24, 2008. In amending the 2002 judgment, the Superior Court awarded the Morrises attorney's fees, court costs, and pre-judgment interest from the date they recorded their deed, December 5, 1997, to the date the judgment was granted, January 8, 2002.

[6] The properties as listed in the notice of marshal's sale were Parcel 5-3, Estate Contant, St. Thomas; Parcel 9A, Nye Nordsidevej, St. Thomas; and Parcel 9C, Nye Nordsidevej, St. Thomas. However, Parcel 9A is not listed in the November 22, 2010 order confirming that sale, whereas Parcel 5-3 is listed twice. Whether correct or a result of a typographical error, we cannot tell and do not decide, but we nonetheless note the discrepancy here as one of many uncertainties surrounding the properties at issue in this litigation.

had asserted in their January 19, 2001 motion. They alleged that Ernest knew at the time he sold them Parcel 1A-9-1 that he "[no] longer owned the property" and that he "deliberately disappeared" with their money. (J.A. 251.) The Morrises further detailed their counsel's efforts to locate Ernest through public records and by reaching out to his prior attorney in St. Thomas, but without success. They also pointed out that even though two attorneys, purportedly on Ernest's behalf, had contacted their attorney, nothing happened and Ernest "continued his 15 year denial of the situation until filing his letter to the court." (J.A. 254.)

On June 3, 2013, Ernest filed an amended motion to vacate, arguing that the Superior Court never obtained personal jurisdiction over him in either the 1990 action or the 1998 action because service in each case was insufficient. The Morrises filed a response on June 10, 2013, just before a scheduled June 12, 2013 hearing. The court heard argument from the parties, took Ernest's motion under advisement, and gave him until June 24, 2013, to file a reply. At no point were Rabsatt, the Jeppesens, or the Penns served by Ernest or otherwise informed by the court of his challenge to the judgment in the 1990 action. Finally, in a June 18, 2013 order, the court *sua sponte* scheduled a hearing for July 23, 2013, to "render its decision." (J.A. 39.)

At the July 23, 2013 hearing, the court denied Ernest's amended motion to vacate. Calling his insufficient service claim "dubious" and concluding that he had "actual notice" of the 1998 action, the court held that "16 years is not a reasonable time to set aside a judgment" that is alleged to be void. (J.A. 16-17.) The court reduced its decision to writing the next day, in an order entered July 24, 2013. Ernest filed a timely notice of appeal with this Court 30 days later, on August 23, 2013.

## II. JURISDICTION

This Court has jurisdiction over this civil appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). Because the Superior Court's July 24, 2013 order disposed of the only matter that was submitted to the court for adjudication, it constitutes a final order for the purposes of this Court's appellate jurisdiction. *Appleton v. Harrigan*, 61 V.I. 262, 266 (V.I. 2014)

(an order resolving all motions for relief from judgment constitutes an appealable final order).

## III. DISCUSSION

On appeal, Ernest raises two arguments. His first argument, which contains two sub-points, requests that we reverse the July 24, 2013 order because the judgments entered against him in the 1998 action and the 1990 action are void. Concerning the 1998 action, Ernest argues that service by publication in a newspaper on St. Thomas "was patently unreasonable and not calculated to give notice" because the Morrises' attorney knew that Ernest was living in Brooklyn at the time and not on St. Thomas. (Appellant Br. 5-6.) Concerning the 1990 action, Ernest contends that service in that case was invalid because the affidavit of the process server, Alton George, was defective. While Ernest raised both arguments in the Superior Court, and therefore preserved them for appeal, *see* V.I.S.CT.R. 4(h), the Superior Court did not address either argument on the merits. Instead, the court rejected them both when it found that Ernest's motion was not brought within a reasonable amount of time. This forms the basis of Ernest's second argument on appeal, namely that " '[n]o passage of time can render a void judgment valid, and a court may always take cognizance of a judgment's void status whenever a motion for relief from judgment is brought.' " (Appellant's Br. 12 (quoting *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig,* 434 F. Supp. 2d 323, 332 (E.D. Pa. 2006).) This Court reviews the Superior Court's ruling on a motion to set aside a judgment for an abuse of discretion. *Appleton,* 61 V.I. at 268 (citing *Gould v. Salem,* 59 V.I. 813, 817 (V.I. 2013)).

In denying Ernest's motion to vacate, the Superior Court first explained that it could "set aside an entry of default for good cause, and it may set aside a default judgment" pursuant to Federal Rule of Civil Procedure 60(b).[7] (J.A. 15.) The Superior Court explained at the July 23, 2013

---

[7] Federal Rule of Civil Procedure 60 applied to this proceeding through Superior Court Rule 50, which provides that "[f]or good cause shown, the court, upon application and notice to the adverse party, may set aside an entry of default, judgment by default or judgment after trial or hearing. Rules 59 to 61, inclusive, of the Federal Rules of Civil Procedure shall govern such applications." Although we have noted in the past that Superior Court rules that incorporate the rules of other courts by reference may conflict with section 21(c) of the Revised

hearing that "a Rule 60(b)(4) motion must be brought within a reasonable time," as provided by Federal Rule of Civil Procedure 60(c)(1), and then concluded that "more than 11 years" was an unreasonable length of time. (J.A. 15, 18.) The court further explained that the "authority" it found, as well as the "cases that Ernest cited," hold that the decision to set aside a void judgment is left to the discretion of the trial court. (J.A. 17.) This was an incorrect application of the law. Although we do not know what authority the Superior Court relied on because it never cited any authority at the hearing or in its subsequent order, we do know that Ernest, in his June 3, 2013 amended motion, cited to *Gold Kist, Inc. v. Laurinburg Oil Company*, 756 F.2d 14 (3d Cir. 1985), and argued that the Superior Court need not follow the factors the United States Court of Appeals for the Third Circuit listed in that case to guide district courts when deciding motions to vacate judgment. Considering those factors is only necessary, Ernest argued, " 'when the default judgment was authorized.' " (J.A. 108 (quoting *Gold Kist*, 756 F.2d at 19).) Since the Superior Court never acquired personal jurisdiction over him in the 1998 action, the default judgment entered against him in that action was not authorized. Therefore, under *Gold Kist*, the Superior Court did not have to consider any factors and could instead set aside the Morrises' default judgment "as a matter of law." (J.A. 108.)

■ We do not know if the Superior Court expressly relied on *Gold Kist*. However, it appears likely since the court referred both to the cases Ernest cited in his motion and to the same three-factor test referenced in *Gold Kist* before issuing its ruling. If the Superior Court believed that this decision issued by the Third Circuit, on appeal from the Western District of Pennsylvania, was binding, it erred. Decisions issued by the Third Circuit are binding on the Superior Court — in the absence of contrary precedent from this Court — only when an issue of local law was decided on appeal from the United States District Court of the Virgin Islands, serving either in its former capacity as an intermediate appellate court or in its former capacity as a trial court of general jurisdiction for the Virgin Islands. *See Najawicz v. People*, 58 V.I 315, 327-27 (V.I. 2013) (rejecting

Organic Act, 48 U.S.C. § 1611(c), *see, e.g., Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 578 (V.I. 2015) (citing *Percival v. People*, 62 V.I. 477, 485 n.1 (V.I. 2015), and *Estick v. People*, 62 V.I. 604, 619 n.7 (V.I. 2015)), we are not inclined to address the issue here, particularly without the benefit of briefing from the parties. *See Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 529 n.5 (V.I. 2013).

the parties' assertion that a decision in "a case that originated in the Western District of Pennsylvania" is binding on the Superior Court, and noting: "Although we previously instructed that decisions rendered by the Third Circuit are binding upon the Superior Court even if they would only represent persuasive authority when this Court considers an issue, we have made this statement in the context of decisions the Third Circuit rendered while serving as the *de facto* court of last resort in the Virgin Islands." (alterations, citations, and internal quotation marks omitted)). In other words, Third Circuit decisions are merely persuasive authority if the case was before that court on appeal from the District of Delaware, the District of New Jersey, the Eastern, Western, or Middle Districts of Pennsylvania, or the District Court of the Virgin Islands sitting as a federal trial court. And even if *Gold Kist* were binding on the Superior Court, the court still misapplied it. *See Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 n.11 (V.I. 2014).

██ Contrary to what the Superior Court stated, the Third Circuit in *Gold Kist* actually held that a district court errs "as a matter of law" when it refuses to set aside "[a] default judgment entered when there has been no proper service of the complaint." 756 F.2d at 19. By declaring such judgments void as a matter of law — and by removing the requirement to apply the three-factor test — the Third Circuit signaled that district courts do not have the discretion to decide whether to set aside a void judgment. Rather, they must as a matter of law set them aside. Although not binding on the Superior Court or this Court, *Gold Kist* does state the correct rule that a default judgment entered when a complaint has not been properly served is void and must be set aside. *See, e.g., Cramer v. Wade*, 985 P.2d 467, 470 (Alaska 1999) ("A judgment is void if the court that rendered it lacked personal jurisdiction over the defendant." (citations omitted)); *McLaughlin v. Fidelity Sec. Life Ins.*, 667 A.2d 105, 107 (D.C. 1995) ("A default judgment entered in the absence of effective service is void. . . . No amount of discretion can create jurisdiction where there is none." (citations omitted)); *Mariano v. Surla*, 2010 Guam 2 ¶ 13 ("A default judgment entered without proper service is void since the trial court lacks personal jurisdiction if service is defective. A trial court has no discretion to refuse vacating a judgment if it is void." (citation and internal quotation marks omitted)); *Lange v. Johnson*, 295 Minn. 320, 204 N.W.2d 205, 208 (1973) ("In setting aside a void judgment . . . . [n]o question of discretion is involved. . . . If a judgment is void, it must be set aside. It has no force

and effect. A void judgment is one where the court lacks jurisdiction over the subject matter or over the parties."); *accord V.I. Cement & Bldg. Prods. v. Capital Int'l Corp.*, 42 V.I. 64, 70 n.6 (V.I. Super. Ct. 2000) ("[A] default judgment entered without service is void for lack of personal jurisdiction." (citations omitted)). If the Superior Court has not acquired personal jurisdiction over a party because service was not proper, then a judgment entered by default against that party is void as a matter of law. Whether to set aside that judgment is not a matter within the court's discretion.

■ Since the Superior Court lacks the discretion to decide whether to set aside a void judgment, it further lacks the discretion to impose a time limitation on a motion to vacate a default judgment that is alleged to be void. No amount of time can render a void judgment valid. *See, e.g., Ex parte Full Circle Distrib., LLC*, 883 So. 2d 638, 643 (Ala. 2003) ("[A] party seeking to vacate a void judgment could file a motion for relief 'at any time subsequent to its rendition.' " (quoting *Sweeney v. Tritsch*, 151 Ala. 242, 44 So. 184, 185 (1907))); *Jones v. Hersh*, 845 A.2d 541, 545 (D.C. 2004) (there is "no time limit on an attack upon a void judgment" (citation and internal quotation marks omitted)); *State v. Ambrose*, 191 Md. 353, 62 A.2d 359, 366 (1948) ("A judgment by a court without jurisdiction over the parties is not merely erroneous, but 'is absolutely void and may be assailed at all times, and in all proceedings by which it is sought to be enforced.' " (quoting *Hanley v. Donoghue*, 59 Md. 239, 244 (1883))); *Sullivan v. Tarope*, 2006 MP 11 ¶ 35, 7 N. Mar. I. 303 ("Refusing to uphold a void judgment is not an act of judicial discretion; it is mandatory. The passage of time, in and of itself, does not alter this."); *accord Rubins v. Johns*, 21 V.I. 525, 532 (V.I. Super. Ct. 1985) ("There is no limitation as to when a void judgment may be the subject of legal attack."), *rev'd on other grounds*, 109 F.R.D. 174, 22 V.I 194 (D.V.I. App. Div. 1986). This is also the rule of the majority of federal appellate courts. Despite the "reasonable time" requirement imposed by Federal Rule of Civil Procedure 60(c)(1) — which purports to govern all grounds for relief from judgment under Rule 60(b), including subsection (b)(4) — nearly every federal court of appeals has held that "Rule 60(b)(4) motions are not governed by a reasonable time restriction." *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1179, 407 U.S.

App. D.C. 133 (D.C. Cir. 2013) (citing *Austin v. Smith*, 312 F.2d 337, 343, 114 U.S. App. D.C. 97 (D.C. Cir. 1962)).[8]

■■ The Superior Court's position that Ernest's motion to set aside default judgment had to be brought within a reasonable time is rejected. The majority of courts (federal, state, and territorial) that have considered this issue all have held that no amount of time can render a void judgment valid. And the reason why is clear: "Due process requires that the defendant be given adequate notice of the suit, and be subjected to the personal jurisdiction of the court. A judgment rendered in violation of due process is void." *Emps. Ret. Sys. of the Gov't of the V.I. v. Armstrong*, 23 V.I. 35, 37 (V.I. Super. Ct. 1987) (citations omitted). The Superior Court erred in denying Ernest's motion to vacate on the grounds that it was untimely. That error was not harmless and must be reversed.

---

[8] *See generally "R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123-24 (2d Cir. 2008) ("Although Rule 60(b) provides that most motions for relief, including a motion under Rule 60(b)(4), must be made within a reasonable time, this Court has been exceedingly lenient in defining the term reasonable time, with respect to voidness challenges. In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void may be made at any time." (footnote, citations, and internal quotation marks omitted)); *Sindar v. Garden*, 284 Fed. Appx. 591, 595 (10th Cir. 2008) ("Unlike the other provisions of Rule 60(b), Rule 60(b)(4) is not limited by the timeliness provisions of Rule 60(c); a motion under Rule 60(b)(4) may be made at any time." (citations omitted)); *United States v. One Toshiba Color Television*, 213 F.3d 147, 157 (3d Cir. 2000) (en banc) ("We agree that no passage of time can render a void judgment valid, and a court may always take cognizance of a judgment's void status whenever a Rule 60(b) motion is brought."); *Briley v. Hidalgo*, 981 F.2d 246, 249 (5th Cir. 1993) ("[T]here is no time limit on an attack on a judgment as void." (citation omitted)); *Precision Etchings & Findings v. LGP Gem*, 953 F.2d 21, 23 (1st Cir. 1992) ("A default judgment entered by a court which lacks jurisdiction over the person of the defendant is void, and may be set aside at any time pursuant to FED. R. CIV. P. 60(b)(4)." (citations omitted)); *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) ("There is no time limit on a Rule 60(b)(4) motion to set aside a judgment as void." (citations omitted)); *Pacurar v. Hernly*, 611 F.2d 179, 181 (7th Cir. 1979) ("[A]s applied to a motion for relief from a void judgment under Rule 60(b)(4), the reasonable time limitation . . . must generally mean no time limit, at least absent exceptional circumstances." (citations and internal quotation marks omitted)); cf. *Foster v. Arletty 3 S.A.R.L.*, 278 F.3d 409, 414 (4th Cir. 2002) (noting that "[o]ther circuit courts addressing the issue have concluded that a motion to vacate a void judgment pursuant to Rule 60(b)(4) contains little, if any, time limit" and then rejecting untimeliness argument but without expressly adopting the position of the other federal circuits (citations omitted)); *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1130 (11th Cir. 1994) (noting that the Eleventh Circuit "has been less explicit, but has indicated acceptance of this position," that there is no reasonable time limitation under Rule 60(b)(4)).

██ Finally, we address, in our discretion, an argument Ernest raised in passing that "an evidentiary hearing would have been required at a minimum given the disputed facts." (Appellant's Br. 13.) Ordinarily, this argument would be waived because Ernest did not request an evidentiary hearing in the Superior Court or object to the court's failure to allow him to put on evidence.[9] And on appeal he presents the issue without argument or citation to legal authority, which would also result in it being waived. *See* V.I.S.CT.R. 22(m) ("Issues that were . . . not raised or objected to before the Superior Court . . . or . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal.") But because the issue may recur on remand when the Superior Court considers Ernest's motion on the merits, we find this to be an exception where we may, at our option, "notice an error not presented that affects substantial rights." *Id.*; *see also Malloy v. Reyes*, 61 V.I. 163, 181 (V.I. 2014) ("[A]n appellate court may, in the interests of judicial economy, consider other issues that, while no longer affecting the outcome of the instant appeal, are likely to recur on remand." (alteration in original) (citation, ellipses, and internal quotation marks omitted)).

██ Superior Court Rule 50 directs that any judgment, not only a "judgment by default" but also a "judgment after trial or hearing," may be set aside if "good cause [is] shown" and "notice to the adverse party" is given. By its own terms, therefore, Superior Rule 50 requires a showing of good cause and notice to all adverse parties before a judgment can be set aside. While Ernest tried to show good cause, first on his own and later through counsel, the court never gave him the chance to put on evidence at a hearing where "the disputed facts" could be resolved. (Appellant's Br. 13.) That was in error.

██ Generally, whether to hold a hearing on a motion for relief from judgment is within the discretion of the Superior Court. *See, e.g.*, 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2865 (3d ed. 2012) ("The court need

---

[9] Ernest's trial counsel did alert the Superior Court at the July 23, 2013 hearing that his New York attorney "had found the person who had supposedly notarized the service on Mr. Ernest in St. Thomas and wanted to subpoena him to the hearing to prove that it was a fraud and . . . [that] Mr. Ernest was never actually served." (J.A. 13.) But the Superior Court dismissed the point and proceeded to announce its decision.

not hold a hearing on a motion for relief from a judgment if the motion *clearly* is *without substance* and merely an attempt to burden the court with frivolous contentions." (emphasis added)); *see also Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 374 (8th Cir. 1994) ("[W]hether to grant a hearing or make specific findings in ruling upon a Rule 60(b) motion is left to the district court's discretion." (citation omitted)). But in this instance, the Superior Court abused its discretion by not holding an evidentiary hearing to address Ernest's allegations. In his January 31, 2012 letter sent to the Superior Court judge, Ernest detailed the following:

> In 1980, I moved to Brooklyn, New York, which has been my place of residen[ce] for the past 30 years. After working and saving in 1987, I returned to St Thomas and purchase[d] three parcels of land in preparation for my retirement. In 1994, I agreed to sell one of the parcels to Mr. and Mrs. Kenneth Morris. Our attorneys prepared the sale contract and the sale of the property was finance[d] by Scotia Bank. In 2006, I returned to St. Thomas to negotiate financing for the development of the remaining two parcels of land, which has been my life dream. Two days before the closing, the bank informed [me] that there was a lien on my property. . . . Your Honor, I have never been personally served any notice or subpoena from any court regarding this matter. The Morris family and their Attorney claimed that I could not be reached. The records indicate the subpoena was served to a mailbox address that I have not owned in the last thirty five years.

(J.A. 271-72 (formatting altered).) Based on this letter an evidentiary hearing was necessary to resolve Ernest's challenge to the judgment. He claimed that the Morrises sent a subpoena (though he may have meant summons) to a post office box he no longer owns. Yet, he also acknowledged that by 2006 he knew something was awry. While an affidavit of a newspaper publisher or of a process server may constitute *prima facie* proof of service, *see* 5 V.I.C. § 114(a)(2)-(3), *prima facie* evidence can also be rebutted. *Cf. Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 625 (V.I. 2012); *accord Acosta v. Burris*, 47 Ill. App. 2d 201, 197 N.E.2d 757, 757 (1964) ("[W]here a defendant has not been served with process, the court has no jurisdiction to enter a judgment against him. A sheriff's return is prima facie proof of service and can be overcome only by clear and convincing proof." (citations and internal quotation marks omitted)); *Ayrault v. Houghtailing*, 1 Hill. 635, 636 (N.Y. 1841) ("Simple proof of service by affidavit . . . has always been

held *prima facie* sufficient."). And even though none of the parties dispute that the Morrises effected service by publication, what is in dispute is whether publication in a St. Thomas newspaper, rather than a New York newspaper, was the "jurisdiction 'most likely to give notice' " to Ernest of the pending 1998 action. (Appellant's Br. 11 (quoting 5 V.I.C. § 112(c)).)

We cannot resolve these disputes on the record before us because we have no factual findings to review. Whether a basis exists for vacating a default judgment because service was improper concerns factual questions that can only be resolved by an evidentiary hearing. *See 3RC & Co. v. Boynes Trucking Sys., Inc.*, 63 V.I. 544, 558 (V.I. 2015) (stating that the Superior Court is "require[d] . . . to hold an evidentiary hearing" before making findings of fact); *Boynes v. Transp. Servs. of St. John, Inc.*, 60 V.I. 453, 465 (V.I. 2014) ("If there is a factual dispute . . . then the court must conduct a plenary evidentiary hearing in order to resolve that dispute." (citation and internal quotation marks omitted)). Since the parties raised a dispute over the facts, the court had to hold a hearing to resolve them.

Lastly, because Ernest listed the 1990 action and the 1998 action in the caption of his amended motion and further challenged the default judgments issued against him in both, the Superior Court will be in the best position on remand to determine how to conduct the evidentiary hearing, including whether to consolidate both actions, if appropriate, or hold a joint hearing. But, because the Jeppesens, the Penns, and possibly Rabsatt — in addition to the Morrises — would be adverse parties, they must all be given notice of Ernest's challenge and given a chance to respond. The default judgment issued in the 1998 action was based in part on the judgment and clerk's deed issued in the 1990 action. Both actions concern ownership of the same land, Parcel 1A-9-1, Estate Dorothea. Furthermore, the 1998 action and Penn's 2000 lawsuit were also consolidated. Therefore, on remand, the Superior Court should give all parties with an interest in the disputed land an opportunity to be heard at an evidentiary hearing. Again, we leave to the court's discretion how best to conduct that hearing.

## IV. CONCLUSION

The Superior Court erred in holding that a motion to set aside a default judgment as void must be brought within in a reasonable amount of time. No amount of time renders a void judgment valid and courts must

set such judgments aside if good cause is shown and notice has been given to all adverse parties. We therefore reverse the July 24, 2013 order and remand this matter for further proceedings on Ernest's challenge to the default judgment entered against him. On remand, the Superior Court should conduct an evidentiary hearing on Ernest's challenges to the 1998 action and the 1990 action and give notice to all adverse parties and allow them the opportunity to prove their factual contentions.