**EDWARD W. PELLE, Appellant/Defendant**
**v.**
**CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON,**
**Appellee/Plaintiff**

S. Ct. Civil No. 2015-0119

Supreme Court of the Virgin Islands

January 31, 2017

JOMO MEADE, ESQ.[1] Law Offices of Jomo Meade, St. Croix, USVI, YOHANA MANNING, ESQ., Manning Legal Services, St. Croix, USVI, *Attorneys for Appellant.*

RICHARD H. HUNTER, ESQ., ELISE CATERA, ESQ., Hunter & Cole, St. Croix, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*. SWAN, *Associate Justice*, concurring in part and dissenting in part.

## OPINION OF THE COURT

(January 31, 2017)

HODGE, *Chief Justice*. Edward Pelle appeals the Superior Court's decision to not apply the holding of a recent Virgin Islands Supreme Court case — changing the interpretation of a local statute — to a final judgment entered against him in 2007. We affirm the Superior Court's decision and hold that this Court's interpretation of a law does not render an earlier final judgment void even though it was based on a prior misunderstanding of the law, absent some extraordinary circumstance.

## I. BACKGROUND

Pelle insured his vehicle through Inter-Ocean Insurance Agency under a policy that required the insured to pay an additional premium for any additional driver under the age of 25, which Pelle opted not to pay. (J.A. 109.) Pelle permitted his son, who at the time was under the age of 25, to

---

[1] We note that Attorney Meade is now a judge of the Superior Court of the Virgin Islands but briefing in this case was completed before he took the bench.

drive the vehicle and Pelle's son was involved in an accident. Certain Underwriters at Lloyd's of London, an underwriter for Inter-Ocean Insurance, paid the damage costs — amounting to $36,339.60 — caused by the accident. Then, on March 2, 2006, Lloyd's of London filed an action in the Superior Court seeking indemnification of the $36,339.60 from Pelle. (J.A. 32.) On November 7, 2007, the Superior Court entered an order granting Lloyd's of London's motion for summary judgment and awarded it $36,339.60. (J.A. 58.) Weeks later, on December 3, 2007, the court also assessed attorney's fees in the amount of $4,500, and costs in the amount of $527.54, against Pelle. (J.A. 62.) Pelle did not appeal the court's decision.

Instead, Pelle made payments amounting to $11,500 toward satisfaction of the judgment. The initial tender of $10,000 was paid to Lloyd's of London, but Lloyd's of London rejected Pelle's second payment of $1,500, and instructed him to make the payment directly to Inter-Ocean Insurance. (J.A. 100.) Pelle complied, but refused to continue making payments to Inter-Ocean Insurance because Lloyd's of London did not produce a written agreement demonstrating a reassignment of the judgment debt to Inter-Ocean Insurance. In response, Lloyd's of London filed a praecipe for writ of execution on February 11, 2010, with the Superior Court. The Clerk of the Court issued the writ the same day. (J.A. 63-64.) On February 25, 2010, Pelle moved to quash the writ, which Lloyd's of London opposed on March 5, 2010. (J.A. 69.) The case remained dormant until October 30, 2013, when the Superior Court held a status conference hearing. (J.A. 131.)

Days before the hearing, on November 26, 2013, Pelle filed a second motion to quash the writ of execution and for relief from the final judgment based on this Court's decision in *Joseph v. Inter-Ocean Ins. Agency, Inc.*, 59 V.I. 820 (V.I. 2013), which had been entered two months earlier, on September 25, 2013. In *Joseph*, this Court held that sections 703 and 704 of title 20 of the Virgin Islands Code prohibited exclusionary clauses in vehicular insurance policies up to the mandatory policy limits for drivers under the age of 25 that had been given permission to drive the vehicle. *Id.* at 826. Pelle argued that the *Joseph* decision applied to his case and that he was no longer legally obligated to indemnify Lloyd's of London because the judgment was based on an incorrect interpretation of the law. The Superior Court denied Pelle's motions to quash on November 5, 2015, holding that the judgment in Lloyd's of London's favor was valid

law when it was entered in 2007, and there is nothing in *Joseph* that indicates it should be applied retroactively to cases that had been fully resolved years prior. (J.A. 9-12).

Pelle timely filed a notice of appeal on November 25, 2015. V.I.S.CT.R. 5(a)(1). According to the docket, a second praecipe was received, and a writ of execution was issued on March 15, 2016. The return of service for the writ occurred on April 28, 2016.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The Revised Organic Act of 1954 confers jurisdiction on this Court over "all appeals from the decisions of the courts of the Virgin Islands established by local law." 48 U.S.C. § 1613a(d); *see also* 4 V.I.C. § 32(a) (granting this Court jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court"). The Superior Court's November 5, 2015 order fully adjudicated all issues in this matter, thereby vesting this Court with jurisdiction. *See Garcia v. Garcia*, 59 V.I. 758, 766 (V.I. 2013); *Madir v. Daniel*, 53 V.I. 623, 629-30 (V.I. 2010).

This Court applies plenary review to the Superior Court's application of law, while the trial court's findings of fact are reviewed for clear error. *Boynes v. Transportation Servs. of St. John*, 60 V.I. 453, 458 (V.I. 2014) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)). We review the Superior Court's resolution of a motion to alter, amend, or set aside a judgment for an abuse of discretion. *Ernest v. Morris*, 64 V.I. 627, 636 (V.I. 2016) (citing *Appleton v. Harrigan*, 61 V.I. 262, 268 (V.I. 2014)); *Walters v. Parrott*, 58 V.I. 391, 400 (V.I. 2013). "An abuse of discretion arises only when the decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Appleton*, 61 V.I. at 268 (quoting *Stevens v. People*, 55 V.I. 550, 556 (V.I. 2011)).

### B. Applicability of *Joseph* on a Prior Final Judgment

Pelle does not couch his argument in terms of retroactivity. Instead, he argues that the judgment in favor of Lloyd's of London is void because it was based on an incorrect interpretation of title 20, section 703 of the Virgin Islands Code. In *Joseph*, this Court held that section 703 requires

that insurance policies covering Virgin Islands drivers must "provide the mandatory minimum liability coverage set forth in section 703 for the person named in the policy, as well as any other person using the insured vehicle with the express or implied permission of the named insured." 59 V.I. at 826 (citation omitted). Pelle reasons that it does not matter that this Court's interpretation of the statute was promulgated years after the final judgment in his case was entered. Instead, he contends that, even though the issue was never presented to the Superior Court at the time his case was pending — and that he never appealed the Superior Court's decision — he should now be afforded relief because the Superior Court clearly erred in allowing Lloyd's of London to recover based on an exclusionary clause in the insurance policy that violated a Virgin Islands statute. Thus, he argues that *Joseph* did not change a law that should now be applied retroactively; rather, he contends that *Joseph* merely states the law as it has always been and corrects any prior misrepresentations of the law. By his reasoning, any prior judgment relying on such misrepresentation is void.

Lloyd's of London counters Pelle's analysis by relying on the fact that it recovered a judgment against Pelle in 2007, five years before the *Joseph* case, and that Pelle never appealed the court's decision. It relies on the idea that judgments, once entered, are final, and issues, once decided, may not be re-litigated.

██ Voidness of a judgment is grounds for relief from such judgment. *See Ernest*, 64 V.I. at 639 ("No amount of time can render a void judgment valid.") (collecting cases). But Pelle alleges neither a lack of subject matter jurisdiction or personal jurisdiction, nor does he allege that his due process rights were violated. *See id.* at 638 (voiding a default judgment for lack of personal jurisdiction where complaint had not been properly served); *Gore v. Tilden*, 50 V.I. 233, 239 (V.I. 2008) (holding that "a judgment may be set aside on voidness grounds . . . for a violation of the due process clause of the Fifth Amendment" (quoting *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985)). Instead, Pelle argues that the judgment is void because "[a] court has no authority to render a judgment in contravention of [a] statutory provision." (Appellant's Br. 9-10.)

 However, when the Superior Court issued its 2007 judgment, no precedent existed prohibiting exclusionary clauses in vehicular insurance policies like the one the court relied upon in awarding damages to Lloyd's of London. Moreover, Pelle never advocated in favor of prohibiting such

clauses, nor did he challenge the court's decision by bringing an appeal. We cannot now allow Pelle to re-litigate the issue of whether he owes a debt to Lloyd's of London. Pelle had an opportunity to contest his liability — and to pursue an unfavorable resolution of that issue by appealing — but he did not do so and that right is now forever lost. *See Khalil v. Guardian Ins. Co.*, 59 V.I. 892, 897 n.2 (V.I. 2013) (noting that outcome of underlying decision may have been incorrect in light of *Joseph* but declining to disturb "traditional appellate procedure by undertaking review of an otherwise untimely civil appeal" (citing *Simon v. Joseph*, 59 V.I. 611, 626 (V.I. 2013))). Although "new" legal rules established by an appellate court are applied to *pending* cases, we see no reason to extend this limited form of "retroactivity" to cases that were decided and closed years earlier. *See Mercer v. Bryan*, 53 V.I. 595, 601 (V.I. 2010) ("[I]t is well-established that when an appellate court 'decides a case and applies the (new) legal rule of that case to the parties before it, then . . . it and other courts must treat that same (new) legal rule as 'retroactive,' applying it . . . to all *pending* cases, whether or not those cases involve predecision events.' ") (emphasis added) (quoting *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752, 115 S. Ct. 1745, 131 L. Ed. 2d 820 (1995))); *Brady v. Cintron*, 55 V.I. 802, 822 n.27 (V.I. 2011) (same). *See generally Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398-402, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981) (explaining that the res judicata consequences of a final, unappealed judgment on the merits are not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case") (collecting cases). Thus, the 2007 judgment in Lloyd's of London's favor is a final, enforceable judgment.

While it may seem inequitable that Pelle is required to reimburse Lloyd's of London for the damages arising out of an accident caused by a driver under the age of 25 while the appellant in *Joseph* was relieved of that same duty,[2] the societal interests in upholding final judgments demands such a resolution. *See Moitie*, 452 U.S. at 401-02 ("[T]he interest of the state requires that there be an end to litigation — a maxim which comports with common sense as well as public policy.");

---

[2] We note that our holding in *Joseph* applies up to the mandatory compensatory amount required by law, and it is likely that the $40,000 judgment against Pelle exceeded his policy's limit. Nevertheless, we need not address this issue in light of today's holding.

*Simpson v. Board of Dirs. of Sapphire Bay Condos. West*, 62 V.I. 728, 732 (V.I. 2015) (acknowledging the effect of a final judgment and dismissing appeal for untimeliness where no grounds were offered to excuse filing appeal after the thirty-day deadline) (citing *Peters v. People*, 60 V.I. 479, 484 (V.I. 2014)); *Peters*, 60 V.I. at 484 (refusing to extend deadline for appeal because doing so under normal circumstances would "diminish society's legitimate interest in the finality of a judgment that has been perfected by the expiration of the time allowed for direct review") (internal quotation marks and alterations omitted).

## C. Motion to Quash Writ of Execution

Pelle also argues that the court abused its discretion in denying his motion to quash Lloyd's of London's writ of execution based on Lloyd's of London's bad faith. Pelle asserts that he stopped making payments to Lloyd's of London after it returned one of his payments and requested that he reissue the check in Inter-Ocean Insurance's name. Pelle objected to paying any other entity without a written instrument assigning the debt, and refused to make payments either to Inter-Ocean Insurance or the trust account established by Lloyd's of London's attorney.

The Superior Court held that Lloyd's of London "did not act in bad faith in seeking to collect the judgment, and that instructing [Pelle] to make payments to either Lloyd's [of London's] agent, Inter-Ocean, or to the [attorney's] Trust Account did not invalidate the judgment or adversely affect [Lloyd's of London's] legal right to enforce the judgment." (J.A. 7.)

■ ■ We agree that Lloyd's of London's desire to collect on its judgment through one of its agents does not indicate bad faith. Lloyd's of London directed Pelle by written letter, through Pelle's attorney, on how and where to make payments in fulfillment of his debt. By doing so, Lloyd's of London expressly informed Pelle of the agency relationship it had with both entities, and that both were authorized to accept payments on its behalf. "It is a fundamental tenet of agency law that payment to an agent authorized to receive it is payment to the principal." *Alderman v. Davidson*, 326 Ore. 508, 954 P.2d 779, 783 (Or. 1998) (collecting cases); *Gordon v. Tobias*, 262 Conn. 844, 817 A.2d 683, 689 (Conn. 2003) (citations omitted). Thus, any payments tendered to either Inter-Ocean Insurance or the trust account would reduce the balance Pelle owed on the judgment. We see no reason why Lloyd's of London should be required

to formally assign its interest in the judgment to either entity in order for the payments to be valid.[3] Therefore, the Superior Court did not abuse its discretion in denying Pelle's motion to quash Lloyd's of London's writ of execution.

## III. CONCLUSION

We affirm the Superior Court and hold that the final judgment against Pelle, which was entered years before *Joseph* was decided, is not void and that *Joseph* does not apply to cases that have already been fully adjudicated. We also find that Lloyd's of London did not act in bad faith when it directed Pelle to make payments to one of its agents in fulfillment of the judgment.

SWAN, *Associate Justice*, concurring in part and dissenting in part.

The majority decides that *Joseph v. Inter-Ocean Insurance Agency, Inc.*, 59 V.I. 820 (V.I. 2013), does not apply to this appeal because the judgment in this case was already final when the *Joseph* decision was rendered. I concur on this narrow issue of retroactivity and take no issue with the majority's analysis. However, I opposed the holding in *Joseph*, that an endorsement in an insurance policy which excludes coverage for drivers under the age of twenty-five contravenes the Virgin Islands Compulsory Automobile Liability Insurance Act, and an insurer lacks subrogation rights against the insured. *Id.* at 828. Given that this appeal is premised on *Joseph*, a decision with which I continue to disagree for the reasons elucidated below, I necessarily dissent.

In essence, the underlying facts here are indistinguishable from *Joseph*. The automobile insurance policy between Pelle and Inter-Ocean contains an executed endorsement, which provides that Pelle was afforded the option to pay an additional premium for coverage of permissive drivers under the age of twenty-five. (J.A. at 108.) The subrogation clause in the endorsement expounded that if Pelle declined to pay the higher premium rate, he would "reimburse and pay [his] insurer for any and all damages, costs or fees[,] whether for bodily injury or property damage . . . deemed caused by any driver or operator who is under the age of twenty-five (25) and who is not listed on the policy as named insured." (J.A. at 108.)

---

[3] While we see no harm in Pelle paying his debt to one of Lloyd's of London's agents, we also find no rule that would require him to do so.

Under the Compulsory Automobile Liability Insurance Act, a vehicle owner's insurance policy:

> shall insure the person named therein and any other person, as an insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such vehicle or vehicles in the Virgin Islands, subject to minimum coverage, exclusive of interest and costs.

20 V.I.C. § 703(b).

In January 2005, Pelle permitted his twenty-year-old son to use his vehicle, but he was not a named insured on the policy because Pelle had not paid the corresponding premium. (J.A. at 4.) Pelle's son was involved in a vehicular collision in St. Croix, which caused injuries to two third parties, as well as property damage. He was charged with negligent driving. In compliance with the Compulsory Automobile Liability Insurance Act, Lloyd's of London — Inter-Ocean's underwriter — paid $36,339.60 in damages associated with the accident. Lloyd's of London then filed an action against Pelle in which it requested reimbursement of this amount. As the majority notes, the Superior Court ruled in Lloyd's of London's favor and added attorney's fees and costs to the judgment, and Pelle commenced payments on the judgment.

Clearly, Inter-Ocean was cognizant of its obligations under 20 V.I.C. § 703(b), as the statute is cited in the endorsement, which is a provision in the insurance policy. (J.A. at 108.) And, unquestionably, to comport with our mandatory insurance scheme, Lloyd's of London was compelled to pay the damages at issue, at least at the minimum coverage limits. Nevertheless, dissenting from the holding in *Joseph*, I maintain that insurers in Lloyd's of London's position would then possess the right to seek reimbursement from the named insured pursuant to the subrogation clause in the insurance policy. While the statutory insurance laws may require Lloyd's of London to pay under the terms of the insurance policy, no statutory law prohibits or precludes Lloyd's of London from pursuing a subrogation claim against the insured for damages caused by a youthful driver, for whom the insured did not pay an additional premium.

When ascertaining parties' rights and duties under an insurance policy, we examine the compulsory insurance scheme in our statutes, in

conjunction with the liability policies in the contract, to effectuate the contractual language in a manner which is not contrary to the Virgin Islands Code. *See* 20 V.I.C. § 704(c)(3) ("The policy, the written application therefor, if any, and *any rider or endorsement which does not conflict with the provisions of this Chapter* shall constitute the entire contract between the parties." (emphasis added)); *Western Motor Co. v. Koehn*, 242 Kan. 402, 748 P.2d 851, 853 (Kan. 1988) ("An insurer's right of subrogation is derived from the insurance contract." Consequently, "to determine whether an insurer is barred from claiming a right of subrogation against a particular person, the insurance contract must be examined to determine whether it was the intention of the parties to include the person within the scope of the policy's coverage."). I emphasize here, as I did in *Joseph*, that "[t]here is no explicit prohibition against subrogation in the Compulsory Automobile Insurance Act. Therefore, as long as subrogation is included in the terms of the contract policy, it is allowed under section 704(c)(3)." *Joseph*, 59 V.I. at 833 (Swan, J., concurring in part and dissenting in part).

The parties' policy terms are paramount. For instance, in *Jefferson Ins. Co. of N.Y. v. Travelers Indem. Co.*, 92 N.Y.2d 363, 703 N.E.2d 1221, 681 N.Y.S.2d 208 (N.Y. 1998), the New York Court of Appeals examined the insurance policy language to determine whether the insurer could pursue a subrogation action where a permissive user caused an automobile accident. In that case, the policy contained a clause which provided, "[a]nyone else is an insured while using with your permission a covered auto you [the named insured] own, hire or borrow." *Id.* at 1227.[1] Because the policy "explicitly provid[ed]" coverage for all permissive users, the court found that the insurer lacked subrogation rights. *Id.* at 1228. Most tellingly, the court concluded that for purposes of the antisubrogation rule, there is no contrast between named insureds and permissive users "*except to the extent that the specific policy terms require[ ] a difference in treatment.*" *Id.* at 1228 (emphasis added).

The distinguishing factor in this case, of course, is that the insurance policy terms here expressly differentiate permissive users under the age of twenty-five. Inter-Ocean unambiguously identified this narrow age-based

---

[1] Similar to the Virgin Islands, the court observed that New York statutes also required each automobile policy to cover the named insured for damage occasioned by permissive users of the vehicle. *Jefferson Ins. Co. of N.Y.*, 703 N.E.2d at 1228.

class of drivers as high-risk, and did not intend to cover them without the payment of a higher premium. Accordingly, while Inter-Ocean would adhere to Title 20 V.I.C. § 703(b), they simultaneously prescribed the parameters for subrogation in the contract, which Pelle signed.

This construction of the subrogation doctrine is consistent with the underlying public policy of compulsory insurance. Surely, 20 V.I.C. § 703(b) was not enacted as carte blanche for an insured to avoid paying a higher premium, with the assurance of statutory insulation from losses of his or her own doing. The policy interest motivating the adoption of compulsory insurance is the protection of the general public; therefore, when Lloyd's of London paid the damages which the third parties suffered as a result of the accident in this case, the purpose of the Compulsory Automobile Liability Insurance Act was achieved. *See Nat'l Indep. Truckers Ins. Co. v. Gadway*, 860 F. Supp. 2d 946, 953 (D. Neb. 2012) ("[C]ourts have reasoned that compulsory insurance schemes were enacted to protect innocent members of the public from uninsured drivers."); *Proformance Ins. Co. v. Jones*, 185 N.J. 406, 887 A.2d 146, 155 (N.J. 2005) (given New Jersey compulsory insurance laws, an injured third party "has the right to expect that all other drivers will be insured to the extent required by compulsory insurance"); *Mulford v. Neal*, 2011 OK 20, 264 P.3d 1173, 1181 (Okla. 2004) (purpose of compulsory insurance is "to protect members of the public from the disastrous financial consequences of using the roadways in our automobile-dependent society" and the scheme has "transformed what was a private insurance arrangement into a quasi-public obligation"); *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 329 S.E.2d 136, 140 (Ga. 1985) ("[T]he advent of compulsory motor vehicle liability insurance in this state established the public policy that innocent persons who are injured should have an adequate recourse for the recovery of their damages.") (internal quotation marks omitted).

Provided that under 20 V.I.C. § 703(b), insurers remunerate third-party plaintiffs for their loss or damages, there is neither a basis nor justification for this Court to then invalidate the subrogation clause in a fully executed endorsement between the insurance carrier and the named insured. The Supreme Court of Oklahoma's cautioning on this issue is instructive:

> No public policy requires our interference with an insurance contract hammered out by the parties as long as all applicable legislative man-

dates are met. It is *the intent of the compulsory liability insurance law* that, to the minimum amount of liability coverage required by statute, *the innocent plaintiff should be entitled to recover.* Our decisions invalidating exclusionary clauses have been narrowly crafted to achieve this purpose. Where an offending exclusion has diluted the omnibus coverage required by statute, we have treated the policy as providing the required coverage *for the benefit of the innocent plaintiff.* We have never held, nor do our decisions suggest, that the exclusion is nullified beyond achieving that purpose.

*Ball v. Wilshire Ins. Co.*, 2009 OK 38, 221 P.3d 717, 723 (Okla. 2009) (internal quotation marks omitted).

The antisubrogation rule does not operate in a vacuum, nor is its application categorical. On the contrary, this doctrine requires a showing that the insurer seeks recovery from its insured for the "same risk covered by its policy," *ELRAC, Inc. v. Ward*, 96 N.Y.2d 58, 748 N.E.2d 1, 8, 724 N.Y.S.2d 692 (N.Y. 2001), because its underpinning rationale is that an insurer should be precluded from shifting a loss to an insured when that loss arose from a risk which the insured paid to have covered. *State Farm Mut. Auto. Ins. Co. v. Perkins*, 216 S.W.3d 396, 401 (Tex. App. 2006) ("The insurer that has accepted premiums to cover certain risks should not be allowed to pass the same risks back to its insured in a subrogation action. Otherwise, the insurer would be allowed to avoid the coverage that the insured has purchased."). However, "where a risk is not covered by an insurance policy, an insurer may subrogate against its own insured." *LaSalle Nat'l Bank v. Massachusetts Bay Ins. Co.*, 958 F. Supp. 384, 388 (N.D. Ill. 1997); *North Star Reinsurance Corp. v. Cont'l Ins. Co.*, 82 N.Y.2d 281, 624 N.E.2d 647, 654, 604 N.Y.S.2d 510 (N.Y. 1993) (subrogation permitted because exclusions in the insurance policy rendered the policy inapplicable to the loss at issue).

Certainly, therefore, the antisubrogation rule is not operative here (and in analogous cases), where an insurance policy specifically acknowledged a risk, for which Pelle refused to pay a premium to obtain coverage, and that same risk gave rise to an accident which caused in excess of $40,000 in damages, costs and fees. Rather, when Lloyd's of London recovered its judgment against Pelle pursuant to its subrogation lawsuit against him, it was a valid judgment subject to a writ of execution. The holding in *Joseph*, however, insinuates that Pelle and similarly situated insureds will

unfairly receive protection for risks which the insurance company did not agree to assume. The abject unfairness of that result is facially apparent, and I concur with the principle that "[i]n the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased." *Gibson v. Callaghan*, 158 N.J. 662, 730 A.2d 1278, 1282 (N. J. 1999) (internal quotation marks omitted); *see also Mulford*, 264 P.3d at 1188 ("In other words, when it comes to purchasing insurance, you get what you pay for — nothing more, nothing less."). To hold otherwise would impede the very purpose of subrogation, which is "to prevent injustice and unjust enrichment." *Dix Mut. Ins. Co. v. LaFramboise*, 149 Ill. 2d 314, 597 N.E.2d 622, 624, 173 Ill. Dec. 648 (Ill. 1992); *Bank of Am., N.A. v. Prestance Corp.*, 160 Wn.2d 560, 160 P.3d 17, 21 (Wash. 2007) (same); *State Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 156 (Iowa 2001) (same).

Crucially, the adverse and unfair far-reaching implications of *Joseph* are evident, particularly with an insurance policy such as the one involved here, where no premium was paid to cover drivers under twenty-five years of age. Under *Joseph*, an insured may permit a person under twenty-five years old to drive his vehicle in January, and another youthful operator to drive the same vehicle in May, and still another youthful operator to drive the same vehicle in November, irrespective of driving record or additional risk factors. And should each of these drivers cause a vehicular accident, the insurer is legally obligated to pay the resulting damages and absorb potentially astronomical losses without recourse against the insured. This situation allows the insured to continue paying a standard or general premium, perhaps the same rate as another policy holder who is the sole operator of his or her vehicle. I find it difficult to fathom that this result was the Legislature's intent in enacting the Compulsory Automobile Liability Insurance Act. Most dire is the prospect that automobile insurers in the Virgin Islands may collectively refuse to bear this burden of paying damages caused by youthful drivers for whom no premium has been paid. Automobile insurers may automatically allocate these prospective costs to the general driving public by increasing insurance premiums entirely or altogether, thereby inadvertently punishing and adversely affecting adult drivers with unblemished or safe driving records. Because I cannot subscribe to the holding in *Joseph* on which this appeal is anchored, I respectfully dissent.