IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

August 29, 2025 04:11 PM
SCT-Civ-2021-0026
**DALILA E. PATTON, ESQUIRE**
**ACTING CLERK OF THE COURT**

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

FIRSTBANK PUERTO RICO,      ) **S. Ct. Civ. No. 2021-0026**
     Appellant/Plaintiff,      ) Re: Super. Ct. Civ. No. 273/2012 (STT)
     )
v.      )
     )
HARTHMAN LEASING III, LLLP,      )
     Appellee/Defendant.      )
     )
     )

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas & St. John
Superior Court Judge: Hon. Kathleen Mackay

Considered: October 11, 2022
Filed: August 29, 2025

Cite as: 2025 VI 18

BEFORE:      **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**Christopher Allen Kroblin, Esq.**
**Edward B. Reynolds, Jr., Esq.**
**Shari N. D'Andrade, Esq.**
Kellerhals Ferguson Kroblin PLLC
St. Thomas, V.I. 00802
     *Attorneys for Appellant,*

**Kanaan L. Wilhite, Esq.**
**Treston E. Moore, Esq.**
**Charles S. Russell, Jr., Esq.**
Moore Dodson Russell & Wilhite, P.C.
St. Thomas, V.I. 00804
     *Attorneys for Appellee.*

## OPINION OF THE COURT

**CABRET, Associate Justice.**

¶ 1     Appellant, FirstBank Puerto Rico ("FirstBank") seeks reversal of the Superior Court's denial of its Rule 59 motion for a new trial and to amend the judgment, the Superior Court's grant of possession of certain disputed land parcels to Appellee, Harthman Leasing III LLLP ("Harthman"), and the Superior Court's order granting Harthman's motion in limine to present evidence on damages. Harthman filed a cross-appeal, arguing that the Superior Court erred in finding that a disputed parcel was not added to the parties' lease. For the reasons that follow, we affirm in part and reverse in part the judgments of the Superior Court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

¶ 2     FirstBank is a banking corporation licensed to conduct business in the United States Virgin Islands ("USVI") with a branch office located on St. Thomas. Harthman is a limited liability partnership that owns Parcel 17-B, 17-C, 17-D, and 17-E, Estate Smith Bay, Nos 1, 2, and 3, East End Quarter, St. Thomas, U.S.V.I. East End Plaza ("EEP") was a limited liability company that sought to rent and develop land on the East End of St. Thomas for commercial purposes.

¶ 3     On July 15, 2003, EEP and Harthman executed a lease for Parcel 17-B, which became effective on September 1, 2003.[1] The lease was for an initial term of thirty years with options to renew for two additional terms of ten years each. EEP was responsible for base monthly rent including late fees and interest, as well as most taxes and assessments levied against the property. The lease also granted EEP an option to lease the parcels abutting Parcel 17-B, depending on whether the premises could be rezoned from agricultural to commercial use.[2] The lease specified

---

[1] The lease was originally executed between EEP and the owners of Parcel 17B, Harthman's predecessor in interest; however in 2007, the owners formed Harthman Leasing, LLLP and the lease was assigned to the partnership.

[2] Section 7 of the lease provides that:

that all modifications had to be in writing and signed by the parties. Section 37 of the lease specifically stated that the "[l]ease (including any exhibits or schedules attached hereto) constitutes the entire agreement of the parties on the subject matter hereof and may not be changed, modified, discharged or extended except by written instrument duly executed by the parties hereto.

¶ 4     On December 11, 2003, Harthman and EEP signed a letter ("2003 Amendment Letter") amending the lease to include Parcels 17-C and 17-D. The 2003 Amendment Letter specifically referenced the addition of Parcels 17-C and 17-D; however, it made no reference to Parcel 17-E.[3] Although the 2003 Amendment Letter did not explicitly incorporate Parcel 17-E into the lease, EEP proceeded to insure that parcel and pay its associated property taxes and rent. Additionally, EEP excavated Parcel 17-E to prepare the land for subsequent commercial use and placed a construction trailer on the property.

¶ 5     On September 9, 2005, EEP entered into a Construction Loan Agreement with FirstBank to finance construction on the property. FirstBank agreed to lend EEP $16.6 million dollars for the development of parking, retail, and commercial structures. The Construction Loan Agreement was secured by a Priority Leasehold Mortgage against EEP's interest in the lease. Harthman executed

---

Beginning with the date of this Lease, Lessee shall have an option for ten (10) years to lease part of Parcel No. 17 which abuts Parcel 17-B, that Lessor may rezone for Commercial use. Lessee agrees to lease such property at the then current fair market value for Commercial Real Estate, to be determined at that time by negotiations between Lessor and Lessee. Lessor shall notify Lessee of such rezoning and Lessee shall have a period of sixty (60) days to commence negotiations with Lessor. Provided, however, that if an agreement satisfactory to both parties has not been negotiated and signed within one (1) year following the expiration of the initial sixty (60) days, this option shall automatically terminate."

[3] According to the 2003 Amendment Letter, the addition of Parcel 17-C was contingent on obtaining the proper commercial zoning requirements approved by the government. On December 2, 2005, the zoning change was approved by the governor and Parcel 17-C officially became a part of the lease.

an official consent ("2005 Consent") to the loan agreement between EEP and FirstBank, which

provided that:

> In the event the Bank elects to foreclose its Leasehold Mortgage or elects to make the Assignment effective, the Bank shall thereafter be liable to perform all obligations of the Lessee under the Lease, including but not limited to (a) payment of rent arrearages existing at the time of such election, and (b) the due and punctual payment of all rent thereafter coming due as provided in the Lease, but said election shall not relieve the Lessee of said obligations.

¶ 6     Exhibit A of the 2005 Consent described the lease "as dated July 15, 2003, effective September 1, 2003, as modified by letter dated December 11, 2003." The lease and the 2005 Consent still made no mention of Parcel 17-E.

¶ 7     On January 18, 2008, EEP and FirstBank executed an Amendment to the Construction Loan Agreement to increase the loan amount by an additional five million dollars, from $16.6 million dollars to $21.6 million dollars. Harthman simultaneously consented to the mortgage modification and executed another consent agreement with FirstBank ("2008 Consent"). The terms remained the same under both the 2005 and 2008 Consents. Once again, none of the documents made any reference or mention of Parcel 17-E.

¶ 8     On April 29, 2008, Harthman sent EEP a letter, which proposed amending the ground lease for a second time ("2008 Proposed Amendment"). The 2008 Proposed Amendment sought to include Parcels 17-B, 17-C, 17-D, and 17-E in the description of the leased premises. EEP did not sign the Proposed Amendment due to a disagreement regarding the amount of back rent due.

¶ 9     On November 1, 2010, EEP and Harthman executed a Conditional Agreement to Amend Lease in the hopes that a hotel entity would sublet the parcels. The parties agreed that EEP's rent would be deferred while the Conditional Agreement remained in effect. Like the 2008 Proposed Amendment, the Conditional Agreements described the leased premises to include Parcels 17-B,

17-C, 17-D, *and* 17-E. The Conditional Agreement would expire if EEP failed to secure an agreement with a hotel entity within six months. Ultimately, EEP was unable to secure an agreement with a hotel entity within the time prescribed and the Conditional Agreement expired. Harthman notified EEP of the Conditional Agreement's expiration in a letter dated May 20, 2011, and subsequently terminated the Conditional Agreement.

¶ 10    Following the Conditional Agreement's expiration, EEP failed to deliver the deferred rent payments that were due to Harthman and subsequently defaulted on its obligations under the lease. On June 3, 2011, Harthman sent EEP and FirstBank a Notice of Non-Payment of Rent and claimed that EEP had an obligation to pay back rent in the sum of $715,336.34 to cure its defaults. EEP disputed Harthman's calculation of back rent as overinflated and never cured any of its defaults. On July 26, 2011, Harthman sent a Notice of Default to EEP and FirstBank. On November 22, 2011, FirstBank commenced its own action for debt, foreclosure of leasehold mortgage, and enforcement of guaranty against EEP for its default on the loan for $21.6 million dollars.

¶ 11    In the end, FirstBank decided to accept an assignment instead of foreclosing on the lease and on March 27, 2012, EEP and FirstBank executed a Multi Credit Settlement Agreement ("Settlement Agreement") and an Assignment of Lease in Lieu of Foreclosure ("Assignment of Lease"). The Settlement Agreement and Assignment of Lease provided that FirstBank would assume the rights, obligations, and interest of EEP in the ground lease of the property. The Assignment also stated:

> This Assignment is made pursuant to the terms of the Settlement Agreement and in accordance, to the extent necessary, with the requirements of the Mortgage and Consent. It is understood that there are no considerations, verbal or otherwise, between the parties other than those set forth herein and therein. This Assignment may not be modified or altered accept [*sic*] in writing signed by the parties hereto.

*FirstBank P.R. v. Harthman Leasing*         2025 VI 18
S. Ct. Civ. No. 2021-0026
Opinion of the Court
Page 6 of 29

Exhibit A of the Assignment described the "Leased Premises" as Parcel 17-B and 17-D and the lease as "dated July 15, 2003, effective September 1, 2003, as modified by letter dated December 11, 2003."

¶ 12     Shortly after EEP assigned its rights, Harthman and FirstBank disputed the amount of money required to cure EEP's debts. Harthman and FirstBank specifically disputed whether Parcel 17-E ever became part of the lease and whether FirstBank had any obligations regarding Parcel 17-E. On May 17, 2012, FirstBank issued Harthman a check for $344,055.17, claiming that amount encompassed the entirety of EEP's debts for all parcels as of May 1, 2012. On the same day, Harthman terminated the lease for failure to timely cure or satisfy earlier notices of default and FirstBank responded by filing a complaint in the Superior Court seeking a declaratory judgment that Parcel 17-E was never part of the lease. Despite the parties' disputes regarding Parcel 17-E, FirstBank continued to pay rent for Parcels 17-B, 17-C, and 17-D through August 2014. Since September 2014, FirstBank placed the monthly rent in an escrow account of one of its attorneys, instead of paying Harthman directly for Parcels 17-B, 17-C, and 17-D.

¶ 13     On August 10, 2012, FirstBank amended its single count complaint to add unjust enrichment, breach of the 2005 Consent, breach of the 2008 Consent, and impairment of security interest. On September 14, 2012, Harthman answered FirstBank's amended complaint and filed counterclaims for breach of contract, debt, possession of the premises, and breach of warranty to defend. In 2019, three issues were tried by the Superior Court and the remaining issues were tried by the jury. The Superior Court decided: (1) FirstBank's claim for Declaratory Judgment as set forth in Count I of its complaint; (2) FirstBank's claim for unjust enrichment as set forth in Count

V of its complaint; and (3) Harthman's claim for possession of the premises as set forth in Count III of its counterclaim.

¶ 14　　The jury returned a verdict on July 29, 2019, and awarded Harthman $6,257,275.39 in damages.[4] On June 4, 2021, the Superior Court issued its initial findings of fact and conclusions of law on whether Parcel 17-E became part of the lease, FirstBank's claim for unjust enrichment, and Harthman's claim for possession of the premises. The Superior Court concluded that Parcel 17-E never became a part of the lease according to any document and therefore, FirstBank acquired no rights or obligations regarding Parcel 17-E. The Superior Court also found that Harthman was entitled to possession of Parcels 17-B, 17-C, and 17-D based on FirstBank's failure to pay rent on those parcels since 2014. On July 2, 2021, FirstBank timely filed a motion for new trial and to amend judgment pursuant to Rule 59 of the Virgin Islands Rules of Civil Procedure ("Rule 59 Motion") and a renewed motion for judgment as a matter of law pursuant to Rule 50 of the Virgin Islands Rules of Civil Procedure ("Rule 50 Motion").[5] FirstBank argued that the jury award was excessive and should be set aside while Harthman maintained that there was sufficient evidence on the record to support the jury's findings.

---

[4] Breakdown of award:

> Base Rent for Parcels 17-B, 17-C, and 17-D (9/2014-7/2019): $3,680,755.34
> 12% interest 9/2014-7/2019: $1,028,409.23
> 5% late charges accumulated from 9/2014 to 7/2019: $184,037.77
> Rent for Parcel 17-E until May 2012: $1,364,073.05

[5] On November 8, 2021, the Superior Court lost its authority to rule on this motion pursuant to Rule 5(a)(4) of the Virgin Islands Rules of Appellate Procedure as it did not issue its findings within 120 days. Nonetheless, the Superior Court intended to deny the motion. Pursuant to Rule 5(a)(4) of the Virgin Islands Rules of Appellate Procedure, we will deem the Rule 50 Motion as denied for the purposes of this appeal.

¶ 15   On November 2, 2021, the Superior Court issued its memorandum opinion and order denying FirstBank's Rule 59 Motion. The Superior Court did not grant a new trial and did not disturb the jury's verdict award, reasoning that it was not erroneous or excessive. Then, on November 8, 2021, the Superior Court amended its conclusions of law to find that possession of Parcels 17-B, 17-C, and 17-D was awarded to Harthman based on FirstBank's failure to cure EEP's defaults rather than non-payment of rent. FirstBank timely filed its first amended notice of appeal on December 1, 2021, and Harthman timely filed its first amended notice of cross-appeal on December 15, 2021.

## II.   DISCUSSION

### A.   Jurisdiction and Standard of Review

¶ 16   "The Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a); *Pelle v. Certain Underwriters at Lloyd's of London*, 66 V.I. 315, 318 (V.I. 2017). A final order conclusively adjudicates all disputes between the parties, ends the litigation on the merits, and leaves nothing to do but execute the judgment. *Brathwaite v. Xavier*, 71 V.I. 1089, 1095 (V.I. 2019). Here, both parties appeal several judgments and orders from the Superior Court proceedings including the judgment entered on June 4, 2021, the Superior Court's November 2, 2021 memorandum opinion and order denying FirstBank's Rule 59 Motion, and the November 8, 2021 order denying FirstBank's Rule 50 Motion. As the above-mentioned judgments and orders "conclusively adjudicated all disputes between the parties, [they are] final order[s] within the meaning of 4 V.I.C. § 32(a)." *Brathwaite*, 71 V.I. at 1095.

¶ 17    "[This Court's] standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error." *Alexander v. Alexander*, 65 V.I. 372, 377 (V.I. 2016) (citing *Santiago v. V.I. Housing Auth.*, 57 V.I. 256, 263 (V.I. 2012)). "Under clear error review, [the Supreme Court] defer[s] to the Superior Court unless [its] determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Tutein v. Arteaga*, 60 V.I. 709, 721 (V.I. 2014) (quoting *Bradford v. Cramer*, 54 V.I. 669, 673 (V.I. 2011)). "[The Supreme Court] review[s] the trial court's denial or grant of a motion for a new trial only under an abuse of discretion standard." *R.J. Reynolds Tobacco Co. v. Gerald*, 76 V.I. 656, 696 (V.I. 2022). That said, "[w]hen reviewing the denial of a timely filed Rule 59[] motion, an appellate court may consider the correctness of the underlying judgment even if it is not expressly identified in the notice of appeal." *Chavayez v. Buhler*, S. Ct. Civ. No. 2007-060, 2009 WL 1810914, at *2 (V.I. June 25, 2009) (unpublished); *see also Bernhardt v. Bernhardt*, 51 V.I. 341, 346 (V.I. 2009). This Court also reviews a trial court's grant or denial of leave to amend a pleading for abuse of discretion. *Toussaint v. Stewart*, 67 V.I. 931, 941 (V.I. 2017). "An abuse of discretion arises when a decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 622 (V.I. 2017).

## B. Waived Issues

¶ 18    FirstBank identified thirty-two issues in its First Amended Notice of Appeal; however, it only argued four issues in its appellate brief. In the Virgin Islands, "[a]ppellate courts will only review a claimed error that … is supported by argument and citations to legal authority." *Anthony v. FirstBank V.I.*, 58 V.I. 224, 230 n.8 (V.I. 2013) (quoting *Bernhardt*, 51 V.I. at 345). "[I]ssues

raised in a notice of appeal which are not argued in the appellant's brief are waived." *Bernhardt*, 51 V.I. at 346. Accordingly, we will only consider issues FirstBank properly briefed with supporting arguments and citations to legal authority, those issues being: (1) whether the Superior Court erred in denying FirstBank's Rule 59 Motion regarding the jury's damages award for Parcel 17-E; (2) whether the Superior Court erroneously granted dispossession of Parcels 17-B, 17-C, and 17-D based on FirstBank's failure to cure debts or pay rent for Parcel 17-E; (3) whether the Superior Court erroneously expanded the scope of Hartman's counterclaim to include Parcels 17-B, 17-C, and 17-D; and (4) whether the Superior Court erred in automatically denying FirstBank's Rule 50 Motion regarding the jury's findings for the remaining issues.

¶ 19  Harthman also presents several issues in its cross appeal, nearly all of which concern whether the Superior Court erred in its application of the Statute of Frauds and subsequently erred in finding that Parcel 17-E never became a part of the Lease. Harthman asserts that it presented sufficient evidence at trial, such as EEP's rental payments for Parcel 17-E, to find that it satisfied at least one of the several defenses to the Statute of Frauds. Harthman also claims that FirstBank did not have the right to assert the Statute of Frauds before being assigned the rights to the Lease. Unlike FirstBank, Harthman's arguments were thoroughly briefed with citations to legal authority; thus, they will be addressed under a plenary standard of review.

### C. Parcel 17-E

¶ 20  Because the addition of Parcel 17-E is the basis of the parties' dispute, we will begin by addressing all issues concerning Parcel 17-E and then move on to FirstBank's claims regarding the remaining parcels.

¶ 21     The biggest point of contention in this case is whether Parcel 17-E ever became part of the leased premises and whether FirstBank acquired any rights or obligations regarding Parcel 17-E. FirstBank's argument is simple: Neither EEP, Harthman, nor FirstBank included the addition of Parcel 17-E in writing in compliance with the terms of their agreements, and therefore Parcel 17-E never became part of the lease. In contrast, Harthman presents a myriad of complex legal arguments regarding defenses to the Statute of Frauds in an attempt to prove that Parcel 17-E was included in the lease even though Parcel 17-E was never added to the lease in a written document. To support its argument, Harthman cites to EEP's trial testimony that it was leasing Parcel 17-E, EEP's payment of rent and possession of Parcel 17-E, and a collection of writings and letters referring to Parcel 17-E, including the 2008 Proposed Amendment and the Conditional Agreement. While Harthman is correct that the agreements with EEP and FirstBank fall under the Statute of Frauds,[6] Harthman conveniently avoids the plain language of the lease, which contains an unambiguous merger clause. Section 37 of the lease specifically states that the "Lease (including any exhibits or schedules attached hereto) *constitutes the entire agreement of the parties on the subject matter hereof and may not be changed, modified, discharged or extended except by written instrument duly executed by the parties hereto.*" (Emphasis added).

---

[6] The Virgin Islands' Statute of Frauds, 28 V.I.C. § 242, declares that

> Every contract for the leasing for a longer period than one year from the making thereof, or for the sale of any lands, or any interest in lands, shall be void unless the contract or some note or memorandum is in writing, and signed by the party to be charged, or by his lawful agent under written authority.

Because the ground lease was for a term of 30 years, it falls within the purview of 28 V.I.C. § 242.

¶ 22     We have previously held, "[i]f the language of a clear and unambiguous contract includes a merger clause, that clause precludes consideration of extrinsic evidence used to demonstrate an intent that contradicts or adds to the intent expressed in the [contract]." *Phillip*, 66 V.I. at 625 (quoting *Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995) (internal quotation marks omitted)). A "merger clause confirms that the contract is … a complete and exclusive statement of the terms of the agreement," and limits the parties solely to the contract's written terms. *Phillip*, 66 V.I. at 627 (quoting *Hoeker v. Dep't of Soc. & Rehab. Servs.*, 765 A.2d 495, 499 (Vt. 2000)). Consequently, when parties include a merger clause, "evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." *Phillip*, 66 V.I. at 626 (quoting *Cosgrove v. Mademoiselle Fashions*, 292 N.W.2d 780, 784-85 (Neb. 1980)).

¶ 23     In *Phillip*, this Court specifically mentioned the exclusion of "*antecedent* understandings and negotiations" in the face of an unambiguous merger clause, *Phillip*, 66 V.I. at 626, however, it is well established in other U.S. jurisdictions that a merger clause also excludes the introduction of *contemporaneous* negotiations as well.[7] *See UAW-GM Human. Res. Ctr. v. KSL Rec. Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998) ("[P]arol evidence of contract negotiations, or of prior or

---

[7] There are jurisdictions that do not bar extrinsic evidence for contemporaneous *collateral* agreements. The Alabama Supreme Court explained the doctrine well in *Ritter v. Grady Auto. Grp., Inc.*, 973 So. 2d 1058, 1062 (Ala. 2007). In *Ritter*, the Alabama Supreme Court adopted the *Mitchill* test, *Mitchill v. Lath*, 247 N.Y. 377, 160 N.E. 646 (1928),

> a leading case, which gave three requirements for an agreement to be beyond the scope of a merger clause: (1) The agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing.

*Ritter*, 973 So.2d at 1062 (quoting *Hartford Fire*, 270 Ala. at 154, 117 So. 2d at 353). Here, we decline to discuss this doctrine because neither of the parties raised any argument of a contemporaneous collateral agreement.

contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous."); *Ritter v. Grady Auto. Grp., Inc.*, 973 So.2d 1058, 1062 (Ala. 2007) ("A merger clause invokes the parol evidence rule, which precludes a court from considering extrinsic evidence of prior or contemporaneous agreements in order to change, alter, or contradict the terms of the integrated contract.") (internal quotation marks omitted); *Portsmouth Redevelopment & Hous. Auth. v. Ison*, 66 Va. Cir. 336, 353 (Portsmouth Cir. Ct. 2005) ("The legal effect of a determination that the agreement is integrated, according to the Restatement Second, is that 'evidence of prior or contemporaneous agreements or negotiations is not admissible to contradict a term of the writing.'"); *Carrollton Hosp., LLC v. Kentucky Insight Partners II, LP*, Civ. No. 13-21, 2014 WL 2506463, at *15 (E.D. Ky. June 3, 2014) ("[I]n the absence of ambiguity, the terms in a written contract cannot be varied by parol evidence, which 'consists of evidence of agreements between or the behavior of the parties prior to or contemporaneous with the contract', including 'evidence of a contemporaneous oral agreement on the same subject matter, verifying, modifying, contradicting, or enlarging a contract.'") (quoting *Luttrell v. Cooper Indus.*, 60 F. Supp. 2d 629, 631 (E.D. Ky. 1998)).

¶ 24    Here, the merger clause in the lease is unambiguous and the parties' intent is clear: the lease "constitutes the entire agreement of the parties." For this reason, the Court is precluded from considering extrinsic evidence that contradicts the written terms of the lease. The lease and subsequent relevant written agreements describe the leased premises as 17-B, 17-C, and 17-D. Consequently, any of EEP's oral representations or admissions concerning Parcel 17-E contradict the express written terms of the lease and must be excluded. *See Phillip*, 66 V.I. at 625. Harthman also places emphasis on the 2008 Proposed Amendment and Conditional Agreement; however,

EEP openly denied executing the 2008 Proposed Amendment and the Conditional Agreement expired. Accordingly, those pieces of evidence were never incorporated into the lease and must also be excluded. *Id.*

### 1. Harthman's Statute of Frauds Arguments

¶ 25    In the Virgin Islands, "[e]very contract for . . . leasing for a longer period than one year from the making thereof . . . shall be void unless the contract or some note or memorandum is in writing, and signed by the party to be charged, or by his lawful agent under written authority." 28 V.I.C. § 242. Under this implementation of the Statute of Frauds, an oral agreement must be reduced to writing and signed by the party to be charged. *Agueda v. Marcano*, 2024 V.I. 22, ¶ 29 (V.I. 2024). We have stated that a collection of writings can satisfy the statute's requirement of a written memorandum to establish the existence of a lease. *Bogin v. Smith*, 11 V.I. 225, 229-232 (V.I. Terr. Ct. 1977); *Cintron v. Andrews*, 7 V.I. 316, 323 (D.V.I. 1969). A party is precluded from arguing that the Statute of Frauds applies if it admits to the existence of a contract in its pleadings or testimony. *See Claytor v. Chenay Bay Beach Resort*, 42 V.I. 379, 387 (D.V.I. 2000) (citing *Flight Sys., Inc. v. Electronic Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997)). Additionally, the doctrine of part performance "can be invoked . . . to prevent an inequity to a party when that party has relied on (by inducement or acquiescence) an oral agreement which normally would be voided by the Statute of Frauds." *Virgin Islands Distributor, Inc v. Durkee Foods*, 19 V.I. 85, 92 (D.V.I. 1982) (citing *Henderson v. Resevic*, 262 F. Supp. 36 (D.V.I. 1966)).

¶ 26    Here, Harthman argues that a collection of writings, admission by a party at trial, and part performance demonstrate that Parcel 17-E was added to the lease. However, Harthman overlooks the unambiguous merger clause that the parties included in the lease. Because the merger clause

clearly provides that any amendment to the lease must be accomplished in writing, Harthman's defenses to the Statute of Frauds must necessarily fail.[8]

¶ 27    Harthman argues that the Superior Court erred because a collection of writings, primarily the Conditional Agreement, showed that Parcel 17-E was added to the lease. Harthman contends that the specific inclusion of Parcel 17-E as a part of the leased property in the Conditional Agreement proves that Parcel 17-E was added to the lease. We are not persuaded by this argument because the Conditional Agreement expired on May 1, 2011, and there is no collection of writings in the record that overcomes the Statute of Frauds. Moreover, Harthman overlooks the terms of the Conditional Agreement that states that it "shall in no manner be deemed to have created an amendment or modification of the Lease. All existing terms, conditions and provisions of the Lease shall remain unchanged and in full force and effect, until such time as an Amendment to the Lease is executed by and between the undersigned parties." There is no signed writing that added Parcel 17-E to the lease. Although Virgin Islands courts have found an enforceable agreement from writings such as a series of letters or a paper acknowledging the receipt of money, here the parties are sophisticated business entities that contractually agreed on an unambiguous merger clause to amend the lease. *See Bogin v. Smith*, 13 V.I. 225, 229-32 (V.I. Terr. Ct. 1977) (finding the existence of a lease agreement from a series of letters that described the leased premises and payment method); *Cintron v. Andrews*, 7 V.I. 316, 323 (D.V.I. 1969) (holding that a paper acknowledging receipt of payment was a sufficient note or memorandum under the Statute of Frauds to entitle the

---

[8] If any of the defenses to the Statute of Frauds applied, we would have conducted a *Banks* analysis to determine Virgin Islands common law. *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011). However, because the parties' contract included a clear merger clause, we will not reach this issue.

payor to the subject property). The Conditional Agreement states that it does not amend the terms of the lease and therefore it cannot be used to prove that Parcel 17-E was added to the lease.

¶ 28   Next, Harthman argues that EEP's owner, Mr. William Otto, admitted at trial that Parcel 17-E was added to the lease.[9] However, the record belies this argument. At trial, Mr. Otto testified that EEP was interested in Parcel 17-E as part of the plans to build a hotel on the property.[10] Additionally, Mr. Otto stated that in 2008, EEP paid rent, property taxes, and insurance on Parcel 17-E along with the other parcels. However, Mr. Otto definitively stated that he was not aware of any document that added Parcel 17-E to the written lease.[11] Mr. Otto's admissions that Parcel 17-E was vital to any potential deals with a hotel entity and that EEP paid taxes and insured the property do not amount to recognition of an oral contract to add Parcel 17-E to the contract.

---

[9] On cross examination, counsel for Harthman asked Mr. Otto about Parcel 17-E:
"Q. And so you accepted Parcel E in the leasehold? You accepted Parcel E?
. . .
A. Yes, in the sense that we needed it. We were negotiating with the hotel room and it was a crucial part of going further with the hotel."

[10] On cross examination, Mr. Otto testified about EEP's plans for Parcel 17-E:
"Q. And did you not also want a portion - - to use a portion of E for a parking lot?
A. It wasn't for parking. The parking was going to be underneath the hotel. The hotel was elevated above the upper level, but we needed - - we felt if we did the hotel, if we needed laundry facilities or staff quarters or any other kind of structures that would facilitate the hotel, we needed the land for that."

[11] On direct examination, Mr. Otto testified about the parcels included in the lease:
"Q. It was a certain parcel of land that you leased?
A. Yes, the primary parcel was 17-B as in "boy".
Q: Okay. And did there come a time where you amended the lease to include additional parcels?
A. Yes. At a certain point that we added two additional parcels which were designated as 17-C like Charles and "D" like David.
Q. Okay. And were any other parcels that were added to the lease?
A. I don't believe the document that incorporated it different - - did an additional parcel was ever executed, but there was another parcel that was contiguous so as that we were interested in."

On redirect, Mr. Otto stated that there was no signed document that included Parcel 17-E in the lease:
"Q. Okay. And you provided testimony earlier that you're not aware of any written lease anywhere that includes Parcel 17-E with Parcel 17-B, C and D; is that correct?
A. No."

Especially in light of the merger clause, an amendment to add Parcel 17-E to the lease needed to be in a writing signed by the parties. No such document exists on this record.

¶ 29　Harthman further argues that the Superior Court erred by failing to conclude that EEP's payment of rent, taxes, and insurance demonstrates partial performance to include Parcel 17-E in the lease. To begin, "the doctrine of part performance is applicable as a defense to the [S]tatute of [F]rauds." *See Mod. Day Constr., Inc. v. Carty*, No. ST-09-CV-608, 2013 WL 2996549, at *3 (V.I. Super. Ct. June 13, 2013). Under the doctrine of part performance, the terms and subject matter of the contract must be clear and definite. *Matter of Estate of Pitterson*, 40 V.I. 13, 18 (V.I. Terr. Ct. 1998). The party asserting part performance must demonstrate that the opposing party "proposed to honor the oral agreement." *Id.* Additionally, the party asserting part performance "must have relied on this representation, either in performance or pursuance of his contract, so that he would incur an unjust and [unconscionable] injury and loss if the [opposing party] is allowed to rely on the statute." *Id.* The standard under part performance is whether the purchaser's actions are "unequivocally referable to the oral agreement." *Mod. Day Constr., Inc.*, 2013 WL 2996548, at *3 (citations omitted).

¶ 30　Here, Harthman is asserting that EEP paying rent, taxes, and insurance and its excavation efforts on the land demonstrate that Parcel 17-E was added to the lease. Although EEP was contractually obligated under the lease to pay rent, taxes, and insurance on all of the covered parcels, their payments for Parcel 17-E do not overcome the glaring omission of a written document that would have added Parcel 17-E to the lease. We are not persuaded that EEP's payments on Parcel 17-E are unequivocally referable to the oral agreement. As Mr. Otto testified to at trial, Parcel 17-E was an integral part of the plans for a hotel entity. EEP desired to secure

*FirstBank P.R. v. Harthman Leasing*      2025 VI 18
S. Ct. Civ. No. 2021-0026
Opinion of the Court
Page 18 of 29

that parcel in the event that a hotel entity agreed to take over the lease. Instead, a plausible explanation for the payment of rent, taxes, and insurance for Parcel 17-E is that EEP rented Parcel 17-E on a month-to-month basis while attempting to locate an interested hotel entity to take over the entire property including Parcel 17-E. Harthman has therefore not demonstrated that the doctrine of part performance applies.

¶ 31    As Harthman states, "[t]he [S]tatute of [F]rauds ... has as its principal purpose the prevention of fraud." *Hodge v. Hodge*, 15 V.I. 154, 169 (D.V.I. 1979), *aff'd*, 621 F.2d 590 (3d Cir. 1980). EEP, Harthman, and FirstBank are all sophisticated parties and "[t]hey certainly understood and appreciated the meaning and role of the merger clause they chose to include in the [Lease]." *In re Brookland Park Plaza, LLC*, No. 09-34495-KRH, 2009 WL 3297801, at *7 (Bankr. E.D. Va. Oct. 13, 2009) (holding that a merger clause prevented a party from introducing oral evidence to support a Statute of Frauds defense of equitable estoppel). If Harthman and EEP intended for Parcel 17-E to become incorporated into the Lease, they would have executed an effective amendment to the lease, as they did with Parcel 17-C and 17-D. On the contrary, if the parties intended for oral agreements to influence the agreement's written terms, they would not have included the merger clause. Although the Superior Court should have placed more emphasis on the merger clause's effect on the cognizability of extrinsic evidence, it did not err in finding that Parcel 17-E never became part of the lease and that FirstBank never acquired any rights or obligations concerning Parcel 17-E.

¶ 32    Additionally, Harthman briefly argues that FirstBank should be equitably estopped from arguing that Parcel 17-E was not added to the lease. We have previously held that "[i]n the Virgin Islands, equitable estoppel requires an asserting party to demonstrate that (1) the party to be

estopped made a material misrepresentation (2) that induced reasonable reliance by the asserting party and (3) resulted in the asserting party's detriment." *Browne v. Stanley*, 66 V.I. 328, 335 (V.I. 2017) (citing *Joseph v. Inter-Ocean Ins. Agency, Inc.*, 59 V.I. 820, 838 (V.I. 2013)). In a case concerning real property, the doctrine of equitable estoppel should be applied with "great caution." *Id.* On this record, Harthman has not satisfied any of the elements of equitable estoppel. EEP did not make a material misrepresentation to Harthman that Parcel 17-E was added to the lease. Instead, EEP and Harthman proposed a plan, memorialized in the Conditional Agreement, to pursue a deal with a hotel entity for all of the parcels. In the interim, EEP paid rent, taxes, and insurance for Parcel 17-E. Subsequently, the Conditional Agreement expired when EEP could not secure a hotel deal. Harthman received compensation for the property and would have financially benefited if a hotel deal had been finalized. It is far from clear how this arrangement was to Harthman's detriment as required by the doctrine of equitable estoppel. *See Browne*, 66 V.I. at 337 ("A party seeking a permanent equitable interest in land must demonstrate *substantial* detriment."). Harthman failed to prove that the doctrine of equitable estoppel applies.

### 2. FirstBank's Authority to Assert the Statute of Frauds

¶ 33    Although Harthman is precluded from introducing extrinsic evidence to establish its defenses to the Statute of Frauds, the merger clause does not prevent Harthman from challenging FirstBank's ability to invoke the Statute of Frauds. Harthman correctly argues that, as EEP's successor, FirstBank lacked the ability to assert the Statute of Frauds *pre-assignment*.

¶ 34    Generally, "a stranger to a contract lacks standing to enforce compliance with the [S]tatute of [F]rauds." *Palmer v. Bahm*, 128 P.3d 1031, 1035 (Mont. 2006); *Hill v. GM Acceptance Corp.*, 525 N.W.2d 905, 908-09 (Mich. Ct. App. 1994) ("[T]he [S]tatute of [F]rauds is a personal defense

available only to parties to a contract."); *Harbor Fin. Mortg. Corp. v. Hurry*, 277 A.D.2d 693, 694 (N.Y. App. Div. 3rd Dept. 2000) ("[A]s the sale was between the Referee and Bordell, plaintiff would lack standing to assert the Statute of Frauds."); *Fritz v. Iowa State Highway Com.*, 270 N.W.2d 835, 840 (Iowa 1978) ("[N]one but the parties to the transaction may rely upon the [S]tatute of [F]rauds."); *Commercial Union Ins. Co. v. Padrick Chevrolet Co.*, 196 So. 2d 235, 237 (Fla. Dist. Ct. App. 1967) ("The defense of the Statute of Frauds cannot be claimed by one who is not a party or privity to the oral contract."); *Scott v. Ranch Roy-L, Inc.*, 182 S.W.3d 627, 634 (Mo. Ct. App. 2005) ("Plaintiffs cannot challenge the validity of that assignment on the basis that it violated the Statute of Frauds because they were not parties to the assignment."). As FirstBank was not a party to any lease agreements between EEP and Harthman until EEP assigned its rights to FirstBank, it lacked authority to assert the Statute of Frauds prior to 2012.

¶ 35    Nevertheless, once EEP assigned its rights to FirstBank, FirstBank acquired the right to assert the Statute of Frauds and any other defenses EEP may have had under the lease. *First-Citizens Bank & Tr. Co. v. Greater Austin Area Telcoms. Network*, 318 S.W.3d 560, 566 (Tex. App. 2010) (citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000)) ("An assignee stands in the shoes of the assignor and may assert those rights that the assignor could assert."); *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 933 N.E.2d 860, 864 (Ill. App. Ct. 2010) (citing *Community Bank of Greater Peoria v. Carter*, 669 N.E.2d 1317 (Ill. App. Ct. 1996)) ("The assignment operates to transfer to the assignee all of the assignor's right, title or interest in the thing assigned, such that the assignee stands in the shoes of the assignor."). In addition, Harthman only challenges FirstBank's capacity to assert the Statute of Frauds; however, as discussed above, the dispositive issue in this case is the merger clause, not the Statute of Frauds as Harthman argues.

Even if FirstBank were unable to assert the Statute of Frauds prior to 2012, it still had every right to challenge the addition of Parcel 17-E under the express terms of the assigned lease. Under the Assignment and Consent's terms, FirstBank was only required to cure EEP's defaults under the lease. Consequently, Harthman is incorrect in its brief when it states that FirstBank – as an assignee of the lease – could not challenge *any* debts EEP incurred for Parcel 17-E pre-assignment because FirstBank never agreed to those terms. FirstBank agreed to cure defaults under the lease, and if Parcel 17-E never became part of the lease, FirstBank can dispute those debts.

### 3. Denial of FirstBank's Rule 59 Motion

¶ 36    This Court will now review the Superior Court's decision to deny FirstBank's Rule 59 motion for a new trial and to amend the judgment. At trial, the jury found FirstBank responsible for outstanding rent, late fees, and penalties for *all* Parcels, and awarded Harthman a total of $6,257,275.39. Of that sum, $1,364,073.05 was for outstanding rent and subsequent fees that EEP incurred on Parcel 17-E *before* the lease was assigned to FirstBank. Despite the jury's award regarding Parcel 17-E, the Superior Court found, as a matter of law, that Parcel 17-E never became part of the lease because Parcel 17-E was never added to the lease. FirstBank then filed its Rule 59 Motion on the premise that the jury's award was excessive for including damages on Parcel 17-E.[12] The Superior Court eventually upheld the entire jury award despite agreeing with FirstBank that the jury award included rent for Parcel 17-E pre-assignment. FirstBank specifically argues that it is only responsible for what is contained in the lease post-assignment. In considering FirstBank's claims, we must first look to the standards governing Rule 59 motions.

---

[12] FirstBank also argued there was a change in controlling law that warranted a new trial based on the Superior Court's findings; however, FirstBank only challenges the sufficiency of the evidence on appeal.

¶ 37    There are different standards for granting Rule 59 motions for jury trials and non-jury trials.

As FirstBank's first issue on appeal regards the jury's damages award, this Court will look to Rule

59's standards governing jury trials. The relevant portions of V.I.R. CIV. P. 59 provide:

> (a) In General.
>> (1) The court may, on motion, grant a new trial on all or some of the issues
> — and to any party — as follows:
>> (A) after a jury trial, for any one of the following reasons:
>>> ...
>>> (iv) excessive or inadequate damages

¶ 38    In other words, the court may grant a new trial if the jury returns an excessive or inadequate

damages award. *Id.* The Virgin Islands recognizes an excessive damage award in tort to be one that

"no rational jury, acting on the basis of the full evidentiary record, and without being inflamed by

passion or prejudice or other improper consideration, could have awarded." *R.J. Reynolds Tobacco*

*Co. v. Gerald*, 76 V.I. 656, 694 (V.I. 2022) (citing *Creative Minds, LLC*, No. ST-11-CV-131, 2014

WL 4908588, at *11 (V.I. Super. Ct. Sept. 24, 2014)). In its November 2, 2021, memorandum

opinion, the Superior Court also quoted similar Virgin Islands law, stating "[a] damages award is

'inviolate,' unless the award is 'so excessive as to shock the judicial conscience and to raise an

irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial.'"

*Cherubin v. LIAT (1974)*, 70 V.I. 558, 570 (V.I. Super. Ct. 2019) (citations omitted). The Superior

Court then went on to reference *Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 437-38 (V.I. 2016), a

landmark Virgin Islands decision refusing to recognize the doctrine of remittitur. The Superior

Court interpreted *Antilles* to "effectively grant[] the jury sole authority in determining damages

awards." While it is true that this Court has longstanding precedent respecting the province of the

jury, the Superior Court here misinterpreted the holding in *Antilles*. 64 V.I. at 435, 438. This Court

in *Antilles* declined to recognize remittitur; however, the opinion expressly "permit[s] a jury's verdict to be altered by a judge only if it is *not supported by sufficient evidence in the record*, or if a reduction is compelled under the United States Constitution." *Id.* at 437-38 (emphasis added). This Court in *Atlantic Human Resource Advisors, LLC v. Espersen*, 76 V.I. 583, 621 (V.I. 2022) reaffirmed the holding in *Antilles* and stated the following:

> Thus, the promulgation of Rule 59(a)(1)(A)(iv) does not overturn the decision of *Antilles School* or otherwise resurrect remittitur, but rather acknowledges that *Antilles School* nevertheless authorizes courts to set aside damage awards and grant a new trial for other reasons. In *Antilles School*, we identified, at a minimum, three such reasons: situations where the evidence is insufficient to support the jury's damages award, where the verdict is against the weight of the evidence, or where the damages awarded by the jury are so excessive as to violate the Due Process Clause of the Fifth or Fourteenth Amendments to the United States Constitution.

(quoting *Antilles Sch.*, 64 V.I. at 435, 438 (internal quotations omitted)).

¶ 39    Here, FirstBank was not arguing that the jury's award was so excessive it "shock[ed] the judicial conscience," but rather that the jury's award was excessive because there was insufficient evidence to support the inclusion of back rent for Parcel 17-E. For this reason, the appropriate test to apply for FirstBank's Rule 59 Motion is "whether sufficient evidence existed on the record which, if accepted by the jury, could sustain the verdict." *Lembach v. Antilles Sch., Inc.*, No. ST-12-CV-613, 2015 WL 2120508, at *3 (V.I. Super. Ct. Apr. 1, 2015), *aff'd*, 64 V.I. 400 (2016) (quoting *Hourston v. Harvlan, Inc.*, 457 F.2d 1105, 1107 (3d Cir. 1972)). As stated above, Parcel 17-E never became a part of the leased premises, and the parties were precluded as a matter of law from using extrinsic evidence to prove otherwise based on the unambiguous language of the lease. Further, the terms of the 2005 and 2008 Consents were clear: FirstBank was only responsible for curing EEP's defaults under the lease. If Parcel 17-E never became part of the ground lease,

FirstBank was not responsible for curing those debts. Consequently, there was no basis for the jury to award damages on Parcel 17-E and the Superior Court abused its discretion by failing to grant FirstBank's Rule 59 motion.

### D. Possession of the Parcels

¶ 40    The next issue FirstBank presents on appeal is whether the Superior Court had a proper basis for granting possession of Parcels 17-B, 17-C, and 17-D to Harthman. FirstBank argues that the Superior Court erred by granting possession of the parcels to Harthman based on FirstBank's failure to fully cure EEP's defaults or pay rent on Parcel 17-E.

¶ 41    In its initial findings of fact and conclusions of law, entered on June 4, 2021, the Superior Court reasoned that Harthman was entitled to possession based on FirstBank's failure to "pay rent to Harthman for *Parcels 17-B, 17-C, and 17-D* since September 2014." (emphasis added). On November 8, 2021, the Superior Court amended its findings of fact and conclusions of law to conclude that "[d]ue to FirstBank's failure to cure EEP's default, as set forth in the Assignment of Lease, Harthman is entitled to possession *of Parcels 17-B, 17-C, 17-D*." (emphasis added).

¶ 42    Neither the initial findings or the amended findings make any mention of Parcel 17-E. FirstBank's argument – that it was improperly dispossessed based on its failure to cure EEP's defaults or pay rent on 17-E – is simply incorrect. Instead, the Superior Court definitively found that "FirstBank's tender of $344,055.17, on May 17, 2012 failed to cure EEP's default on Parcels 17-B, 17-C, and 17-D." FirstBank points to a footnote in the Superior Court's November 2, 2021

opinion[13] that outlines the jury's award of damages but fails to support its argument that the Superior Court granted dispossession because of rental arrears on Parcel 17-E. Because FirstBank did not advance any other arguments supported by citation to legal authority or explain how dispossession was premised on Parcel 17-E, we will not address this issue further and consider it waived. *See* V.I.R. APP. P. 22(m)(3) ("Issues that…are only adverted to in a perfunctory manner or unsupported by argument and citations to legal authority are deemed waived for the purposes of appeal."); *Simpson v. Golden*, 56 V.I. 272, 279 (V.I. 2012) ("To properly obtain review, an appellant has a duty to outline in his main appellate brief the issues for which review is sought, and the issues thereby listed shape the parameters of the appellate court's consideration. Moreover, an appellant is bound to submit arguments in support of the issues presented, supported by legal authorities and applied to the facts reflected on the record.) (quoting *Ibrahim v. Gov't of the V.I.*, 47 V.I. 589, 594 (D.V.I. App. Div. 2005))).

## E. Sufficiency of the Pleadings

¶ 43    Next, FirstBank challenges the sufficiency of Harthman's pleadings and the Superior Court's July 19, 2019, order allowing certain claims to proceed to trial. FirstBank argues that Harthman's counterclaims only included claims regarding Parcel 17-E and, therefore, the pleadings were not broad enough to include claims for unpaid rent on the other three parcels. FirstBank specifically argues that the Superior Court erred in allowing the issue of escrowing rent

---

[13] Footnote 3 of the Superior Court's November 2, 2021 memorandum opinion denying FirstBank's Rule 59 Motion states:

> Harthman successfully argued to the jury that it was entitled to the sum of $6,257,275.39, and provided the following breakdown to support that sum:
>> Base Rent for Parcels 17-B, 17-C, and 17-D (9/2014-7/2019): $3,680,755.34
>> 12% interest 9/2014-7/2019: $1,028,409.23
>> 5% late charges accumulated from 9/2014 to 7/2019: $184,037.77
>> Rent for Parcel 17-E until May 2012: $1,364,073.05

for Parcels 17-B, 17-C, and 17-D to proceed to trial as those issues were not properly before the Superior Court.

¶ 44   It is well settled that the Virgin Islands is a notice pleading jurisdiction. *Basic Servs., Inc. v. Gov't of the V.I.*, 71 V.I. 652, 659 (V.I. 2019). "When this Court adopted the Virgin Islands Rules of Civil Procedure effective March 31, 2017, the rules confirmed that the Virgin Islands is 'a notice pleading jurisdiction' pursuant to V.I. R. CIV. P. 8(a),[14] effectively rejecting the heightened pleading standard applicable in the federal courts under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and its progeny in the federal courts." *Id.*; *see also Mills-Williams v. Mapp*, 67 V.I. 574, 585 (V.I. 2017). "Effectively, the court takes a more liberal approach when reviewing the sufficiency of a pleading. The Supreme Court has a strong preference for trial courts to decide doubtful cases on their merits rather than dismiss them for a failure to strictly follow purely procedural rules." *Bank of Nova Scotia v. Flavius*, No. SX-16-CV-125, 2018 WL 745958, at *6 (V.I. Super. Ct. Feb. 2, 2018).

¶ 45   To satisfy notice pleading requirements in the Virgin Islands, "a plaintiff must provide a short and plain statement showing that the pleader is entitled to relief." *Great St. Jim, LLC v. ProSolar Sys.*, No. ST-19-CV-57, 2020 WL 13532747, at *2 (V.I. Super. Ct. Feb. 13, 2020) (quoting *In re Adoption of the VI Rules of Civil Procedure*, No. 2017-001, 2017 WL 1293844 at *19 (V.I. Apr. 3, 2017)). "A complaint has been sufficiently stated when it adequately alleges facts

---

[14] The Advisory Committee Note to V.I. R. CIV. P. 8(a) states that "[the] practice in the Virgin Islands continues to adhere to the traditional 'notice' pleading ethos as many states and territories have chosen to do, applying an approach that declines to enter dismissals of cases based on failure to allege specific facts which, if established, plausibly entitle the pleader to relief."

that put [a party] on notice of claims brought against it." *Id.* (quoting *Brathwaite v. H.D.V.I.*

*Holding Co.*, No. ST-16-CV-764, 2017 WL 2295123 at \*2 (V.I. Super. Ct. Apr. 3, 2017)).

¶ 46　Looking at the pleadings, paragraphs 26 and 27 of Harthman's counterclaims specifically

state:

> FirstBank was obliged and obligated to continue paying rent without protest in the
> same manner and fashion as EEP for property EEP deemed necessary for its project.
> FirstBank failed and refused to pay rent due from May, 2012, specifically for Parcel
> 17-E, *but for that and in conjunction with late fees, penalties, interest and related
> damages to be proven at trial for all parcels, Harthman has been damaged.*

(emphasis added). Harthman's counterclaim clearly references a broad range of disputed fees for

all parcels, and this should have placed FirstBank on notice that disputes could arise concerning

all parcels. Although FirstBank had not begun to escrow rent payments when Harthman filed the

counterclaim, the counterclaim encompassed damages for all parcels. Because this issue was

sufficiently pled concerning rental payments for all parcels, the jury was entitled to hear evidence

about FirstBank's actions to escrow the rent payments. Consequently, the Superior Court did not

abuse its discretion in allowing Harthman's claims to proceed for all parcels. Under our liberal

pleading standards, the Superior Court did not abuse its discretion in determining that Harthman's

counterclaim was sufficiently broad to encompass unpaid rent on all the parcels.

### F. Rule 50 Motion

¶ 47　The final issue that FirstBank raises on appeal is the Superior Court's denial by default of

FirstBank's Rule 50 motion for a directed verdict. At trial, FirstBank moved for judgment as a

matter of law on each of Harthman's counterclaims, arguing that there was insufficient evidence

to support each count. On July 2, 2021, FirstBank renewed its motion for judgment as a matter of

law. In an order dated November 8, 2021, the Superior Court stated that it "intended to deny the

Motion" but "the time to do so has expired" pursuant to V.I.R. APP. P. 5(a)(4). Rule 5(a)(4) states

that:

> If any party timely files in the Superior Court a motion for judgment as a matter of law...the time for filing the notice of appeal for all parties is extended until 30 days after entry of an order disposing of the last such motion; provided, however, that the failure to dispose of any motion by order entered upon the record within 120 days after the date the motion was filed shall constitute a denial of the motion for purposes of appeal.

¶ 48    Accordingly, we will treat the Rule 50 Motion as denied for the purposes of this appeal. However, FirstBank fails to cite to any legal authority in support of its argument that it was entitled to a directed verdict. FirstBank's arguments on this matter are waived because it merely listed each jury question and stated that a directed verdict should be entered in its favor. *See* V.I.R. APP. P. 22(m)(3); *Simpson*, 56 V.I. at 279–80 (V.I. 2012); *Percival*, 62 V.I. at 490. This form of conclusory argument deprives this Court of any meaningful opportunity to review an allegation of error.

### III.    CONCLUSION

¶ 49    Accordingly, we affirm in part and reverse in part the judgments of the Superior Court. We affirm the Superior Court's July 19, 2019 order granting Harthman's motion in limine to present evidence of damages relating to all parcels because Harthman's counterclaim was sufficiently broad to satisfy the Virgin Islands' liberal pleading standard. And we hold that FirstBank's remaining arguments on the possession of the parcels and FirstBank's Rule 50 motion are waived because FirstBank failed to fully brief these issues with citation to legal authority and argument. We reverse the Superior Court's November 2, 2021, opinion and order denying FirstBank's Rule

59 motion because Parcel 17-E was never added to the lease and FirstBank only incurred the duty to cure EEP's defaults under the terms of the lease. We remand the case to the Superior Court to amend the judgment to recalculate the damages award and exclude the jury's erroneous damages award for Parcel 17-E.

Dated this 29th day of August, 2025.

BY THE COURT:

**MARIA M. CABRET**
**Associate Justice**

ATTEST:
**DALILA E. PATTON, ESQ.**
**Acting Clerk of the Court**

By: _____
**Deputy Clerk**
**Dated:** 8-29-25